TALKIN, MUCCIGROSSO & ROBERTS, L.L.P.
ATTORNEYS AT LAW
40 EXCHANGE PLACE
18TH FLOOR
NEW YORK, NEW YORK 10005
(212) 482-0007 PHONE
(212) 482-1303 FAX
WWW.TALKINLAW.COM
EMAIL: INFO@TALKINLAW.COM

MARYLAND OFFICE:
5100 DORSEY HALL DRIVE
SUITE 100
ELLICOTT CITY, MD 21042
410-964-0300

NEW JERSEY OFFICE:
79 MAIN STREET
SUITE ONE
HACKENSACK, NJ 07601
201-342-6665

November 8, 2020

Honorable Joseph F. Bianco
Visiting United States District Judge
Eastern District of New York
United States Courthouse
100 Federal Plaza
Central Islip, New York

BY ECF

Re: United States v. Kenner & Constantine
13 Cr. 607 (JFB)

Dear Judge Bianco:

Defendant Tommy Constantine ("Constantine") respectfully submits this letter in in further supplement to his Sentencing Memorandum, which was filed on September 25, 2019 (DE 718), his first sentencing supplement dated October 16, 2019 (DE 748) and his second sentencing supplement filed on March 13, 2020 (DE 823). This letter is also submitted in brief response to the government's sentencing submission dated November 4, 2020 (DE 946). Constantine's continued positive conduct during his five and half years of release on pretrial supervision and the ever increasing potential for Eufora to create a return on the hockey players' investment are important personal "history and characteristics" and "circumstances of the offenses" of conviction that warrant consideration for a downward variance from the applicable Guidelines range pursuant to 18 U.S.C § 3553.

**More Positive Conduct Since Release: Procurement of COVID-19 Tests**

In Constantine's original sentencing submission, filed September 25, 2019, he detailed the positive conduct he has engaged in since his release on bond on June 14, 2014. Since that filing, Constantine has continued to be the bedrock of his family. His wife and young children rely upon him for emotional and developmental support. Also, as of the writing of this letter, Constantine has been a liberty in his community, under numerous conditions including electronic

monitoring, for nearly five-and-a-half-years. During this extended period of time, defendant has been in full compliance with his pretrial release and his supervision record is unblemished. This compliance demonstrates to the Court that Constantine has been specifically deterred and is rehabilitated. His actions also prove that he has, and will, observe the law and the rules of this Court and that he will be a productive member of his community.

Additionally, Constantine's contributions to his community, many of which were detailed in the letters of support attached to his original and October 16, 2019 sentencing submissions, have continued in earnest. When the COVID-19 pandemic began to ravage Arizona, Constantine stepped up. Through his relationship with Dr. David Jacofosky,[1] Constantine learned that COVID test kits were scarce, and practically unavailable, to healthcare providers throughout the Phoenix metropolitan area. Clinics and physicians were scrambling to obtain reliable COVID test kits and could not use testing as a method to help control the spread of the virus. Constantine dedicated his efforts to alleviating this dire problem. His actions are reported to the Court in the attached letter from Dr. Tyler Southwell ("Dr. Southwell"),[2]a family medicine practitioner in the Phoenix area and the "founder of ProtectAZ, a nonprofit organization focused on bringing PPE and COVID testing to our community [and] across the state." He describes how Constantine "single handedly vetted through all the players in the market to find a product superior to what my foundation could source, and what's more he made it possible for our organization and other healthcare providers to get it directly [from the] manufacturer at a fraction of others' price." Dr. Southwell noted Constantine's "relentless pursuit to meet a goal" even though "it was clear to [Dr. Southwell] that this tireless work was not for personal enrichment, but rather was done out of true concern and fear for our community."

Dr. Jason Scalise ("Dr. Scalise"), a physician that has "been practicing orthopedic surgery in Phoenix and [who has] been helping to lead one of the largest physician organizations in the country," Healthcare Outcomes Performance Company ("HOPCo"), offers a similar account , writing:

> "At the time, Arizona was one of the least prepared regions of the country to handle the testing demands of the population. Recognizing the risks to our community, Mr. Constantine realized that he could sacrifice his time and resources to make a material difference. He spent countless hours sourcing appropriate antibody tests kits which had been vetted and deemed reliable."

Dr. Scalise was impressed by Constantine's effort and dedication, noting that "his character was a prominent fixture throughout these efforts as he frequently turned away lesser quality options or unsustainable solutions. Although these may have been easier to source or implement, they were

---

[1] Dr. Jacofsky summitted a letter of support on behalf of Constantine that was attached to the September 25, 2019 filing, and he is the individual that was selected to take Constantine's place as the Trustee of the Constantine children's trusts.

[2] Letters from Dr. Southwell, Dr. Jason Scalise and Trevor Waters are attached collectively as Exhibit A. The letter from Watters was previously sent directly to the Court and was docketed (DE 842) but is also attached hereto for the Court's convenience.

not best suited for the needs of the public. His leadership was critical in this regard." After HOPCo was able to obtain the tests, Constantine also assisted in public outreach by assisting in developing a website that facilitated the testing process. Dr. Scalise remarks that Constantine "championed" these endeavors "yet he asked for no credit []or recognition of his achievements but persistently" stated that his actions were motivated by the fact that, in his mind, "it is the right thing to do."

Trevor Watters ("Watters"), the managing partner of Denali Medical Group ("Denali') informs the Court of a similar experience he had with that Constantine. Denali was tasked with testing employees at a major food distributor. However, Watters was having great difficulty finding Covid-19 tests. After hearing about Constantine's success at locating tests, he contacted him and requested his assistance. Constantine agreed to assist him and "worked tirelessly with [Watters] to personally solve this problem and source these rapid Covid-19 tests for" the food distributor. Like Dr. Southwell, Watters believes that Constantine was motivate by "morally helping our country" avoid a food shortage.

Dr Southwell points out that "The testing kits Mr. Constantine helped us procure will have saved lives of potentially thousands by the time this year comes to a close. I will also point out that ProjectAZ and my practice are not the only institutions to receive his help ..." At the time that Dr. Southwell, Dr. Scalise and Watters wrote their letters to the court, they had known Constantine for a short period of time. The unbiased accounts offered in these letters provide the Court with valuable insight into Tommy Constantine's character, and the person he is today as he stands before the Court to be sentenced.

**Update on Eufora**

On March 12, 2020, Constantine filed a letter (DE 823) with the Court providing an update regarding the sale of Eufora. This section is submitted to apprise the Court of the current circumstances regarding the sale. The March 12, 2020 letter included an affidavit from [REDACTED] the President of [REDACTED] the company purchasing Eufora, that stated, in part, that Eufora AZ, an LLC that is owned by a group of hockey players, would receive 711,078 shares of [REDACTED] as part of the Eufora purchase price. DE 823, p. 2. At that time, [REDACTED] averred that the consummation of this sale had been held up by regulatory issues that were exacerbated by COVID-19 delays. Constantine subsequently sent a letter[3] to the government on October 29, 2020 informing it:

- (1) that the [REDACTED] shares are ready for distribution to the hockey players, based upon their respective pro rata ownership interests in AZ Eufora;
- (2) of Constantine's and [REDACTED] understanding of the hockey players' ownership interests in AZ Eufora based on an accounting of their direct investments in the company and their ownership interests indirectly obtained through the CMG sale of Eufora shares and/or the Kenner/Gaarn/Gentry Eufora transaction;

[3] A copy of this letter is attached as Exhibit B but filed under seal to avoid potential ramifications upon the sale from public disclosure.

- (3) that the sale is still moving forward and that [redacted] is continuing to take steps to be publicly listed so that it may be traded on an exchange;
- (4) that [redacted] shares are still trading at $5.00 in the private market;
- (5) that the cash component of the sale has not yet funded due to regulatory issues, but that when funded, as agreed with the government, all monies will be placed in Counsel's IOLA account for distribution in accordance with the Court's forfeiture and restitution Orders; and
- (6) of Constantine's availability and willingness to assist in the transfer of these shares.

As stated in Constantine's previous submission on the matter, the Eufora sale is not presented to the Court as a justification for the frauds of conviction. Rather, the sale is relevant to the "nature and circumstance" of the offense, as set forth in 18 U.S.C § 3553(a), and that the sale differentiates Constantine's frauds of conviction from fraud cases heard by this Court and other district courts across the country. The potential for victims to recover lost funds rarely exists because the vast majority of frauds are perpetrated without concern for the success of the fraudulent venture. Of course, potential recovery does not make fraudulent behavior legal or acceptable. However, a documented, verifiable opportunity for recovery based on real assets, such as the patents owned by Eufora, that are present in the instant case, do mitigate the offense in comparison to other frauds. Importantly, as Beth Travers, a major investor in Eufora, informed the Court in a letter attached to Constantine's March 12, 2020 submission, "Since his arrest, I have been the one that put a great deal of pressure on Tommy on behalf of the group to monetize the patents." She added, "Tommy was very reluctant to get involved because of his current situation …" The Eufora sale is not a manufactured event to curry favor with the Court as the government has suggested in recent filings, but rather it is a genuine "nature and circumstance" of the offense that favors a downward variance from the applicable Guidelines range.

**Response to the Government's November 4, 2020 Sentencing Submission**

Constantine's sentencing submissions, including this letter, have presented numerous bases justifying a downward variance from the applicable Guidelines range. Without discussing any of these, the government's November 4 2020 letter (DE 946) argues, however, that a sentence at the very top of the Guidelines range of 168 months "is warranted . . . because of the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." (*Id.* at 3 (citations omitted).) While we do not wish to relitigate the arguments already made in Constantine's original or prior supplemental sentencing submissions, Constantine is compelled to respond to some of the government's arguments. Not only does the government letter ignore applicable and appropriate 18 U.S.C. § 3553(a) factors that warrant a below Guidelines sentence, it fails to recognize several of the Court's prior findings of fact and the numerous and significant ways the conduct of Constantine and Kenner was different, which are listed below.

First, as the Court has previously held in determining the Guidelines calculation that Constantine was involved in only a portion of the offense conduct perpetrated by Kenner. For example, Constantine played no role in Kenner's fraudulent drawing down of the hockey

players' lines of credit. He did not, as Kenner did, fraudulently obtain powers of attorney from the hockey players, systematically deplete the lines of credit by means of countless unauthorized withdrawals or hide this theft through a series of lies.

Second, Constantine and Kenner held very different roles in the offense conduct. On this, too, the Court has already ruled in determining the Guidelines range. As the Court held, while Constantine had a prominent role in a portion of the conduct, Kenner was the organizer of the overarching conspiracy and was thus given a larger sentencing enhancement than Constantine. Constantine's leadership role enhancement was for his conduct during the Eufora fraud, not the overreaching frauds controlled by Kenner. While leadership in any fraud is inexcusable, the conduct that resulted in Constantine's two-point role enhancement paled in comparison to that of Kenner that warranted a four-point increase. There is simply no evidence—and the government does not attempt to cite to any—supporting the government's assertion that "Constantine . . . took over the role of front man in the scheme's latter stages." (Gov. Let. at 3.) For the reasons stated in Constantine's prior sentencing submission, the evidence at trial revealed that Constantine at all times operated under the direction of Kenner, and not vice versa. The evidence clearly establishes that Constantine's role in the offense conduct, while significant, was far less prominent than Kenner's role, and that Constantine is, therefore, substantially less culpable than Kenner for the crimes committed.

Third, the Court at Kenner's October 5, 2020 sentencing noted multiple "aggravating factors" relating to Kenner, including perjury, forgery, obstruction of justice, and invasion of privacy. (Tr. 86:6-8.) None of these apply to Constantine. The Court has already rejected allegations that Constantine obstructed justice. Additionally, Constantine did not provide perjurious testimony and there is no allegation that he violated anyone's privacy. In short, none of these aggravating factors relied upon by the Court in determining Kenner's culpability apply to Constantine.

Fourth, Constantine's post-arrest conduct stands in stark contrast to Kenner's. The Court noted at Kenner's sentencing that his actions toward the victims since arrest were "malicious" and that Kenner has time and again belittled the victims in post-trial filings and elsewhere with "harassment . . . insults . . . threats . . . personal attacks, telling the victims they have brain damage [and] faulty memory in fabricating things and repeatedly badmouthing them as bad apples to others, [and] telling them the facts that were proven beyond a reasonable doubt were not facts." (Tr. 86:20-23.) There is no reasonable allegation that Constantine has in any way mistreated the victims in his post-trial conduct. He has never denigrated or attacked the victims, and, unlike Kenner, he did not create a website disparaging them. Instead, and as detailed in his September 2019 submission, Constantine has spent the last five plus years leading a law-abiding life, playing the role of primary caregiver to his children, and giving his time to various friends and causes in an effort to better his community. As argued above and in his March 12, 2020 letter, Constantine has even endeavored to create a means for the victims to recuperate some of their losses. Also set forth above are Constantine's successful efforts to locate testing supplies during the height of the Covid-19 pandemic in his community.

Fifth and finally, Constantine intends to briefly address the Court and express his feelings and the manner in which the offense conduct has affected him, the victims, and his family. The government's holds up as proof that Constantine "has shown no remorse over the course of this proceeding and has not accepted any responsibility for his criminal conduct" an unidentified letter of support which asserted that Constantine was innocent. (Gov. Let at 3.) As the Court is surely aware, Constantine did not tell his friends and family what to tell the Court and exerted no control over the letters they chose to write. That one or more of Constantine's extremely supportive loved ones, including his mother, refuses to agree with the jury's verdict, provides no support that Constantine lacks remorse.

The government further argues that Constantine should be sentenced to the top of his Guidelines range, fourteen years in prison, because such a sentence would be "comfortably below the collection of cases cited by the Court at Kenner's sentencing as informative of a comparative range of sentences." *Id.* This assertion we believe misreads the Court's words and misunderstands the Court's intention in citing this collection of cases. The Court specifically stated that it would be inappropriate to "take one case and suggest where that becomes a benchmark for [an]other case." (Tr. 101:4-22.) The Court further stated, "I don't want to get too caught up in the individual cases because every case is different." *Id.* Indeed, this case is different from each of the cases cited by the Court, but Constantine will abide by the Court's directive and avoid spending unnecessary time comparing apples and oranges. Instead, Constantine relies on this and his prior submissions as ample support for his position that a sentence below the applicable Guidelines range is sufficient, but not greater than necessary, to satisfy the sentencing goals set forth in 18 U.S.C. §3553.

Thank you for Your Honor's consideration of this letter, the attached letters of support and Constantine's prior sentencing submissions.

Very truly yours,

*Sanford Talkin*
Sanford Talkin

cc: AUSA Saritha Komatireddy (by ECF)
AUSA Matthew Haggans (by ECF)