

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JHK:DCL:MMO

*610 Federal Plaza*
*Central Islip, New York 11722*

June 2, 2021

Honorable Joseph F. Bianco
United States Circuit Judge
United States Court of Appeals for the Second Circuit
Long Island Federal Courthouse
Central Islip, New York 11722

        Re:    <u>United States v. Kenner and Constantine</u>
                 No. CR-13-607 (S-2) (JFB)

Dear Judge Bianco:

      The government respectfully submits this letter in accordance with the Court's April 28, 2021 scheduling order directing the government to respond to Danske Bank A/S London Branch's ("Danske") May 21, 2021 letter ("Danske May 21 Letter"). *See* Docket Entry ("DE") 1047. In its May 21, 2021 letter, Danske, *inter alia*: 1) continues to mistake the process for an interlocutory sale of forfeitable property with a sale of forfeited property pursuant to a final order of forfeiture; 2) improperly asserts that Silverpeak can purchase Danske's petition and step into Danske's shoes without having to prove that it is a bona fide purchaser for value in its own right and that it was reasonably without cause to believe that the DCSL Resort is subject to forfeiture; and 3) seeks discovery to which it is not entitled and for which, in any event, the government is not in possession of or has no responsive documents.[1]

    I.    <u>Danske Continues to Mistake the Process for an Interlocutory Sale of Forfeitable Property with the Sale of Forfeited Property Upon Entry of a Final Order of Forfeiture</u>

      Danske continues to confuse the process for an interlocutory sale with a sale upon entry of a final order of forfeiture. The quotes in the footnote on pages 1-2 of Danske's May 21 letter -- which Danske suggests demonstrate that the government misrepresented to the Court that it could effectuate a sale -- only serve as examples of Danske's continued lack of understanding of forfeiture law and procedures. As the government stated at the court conference on April 28, 2021, and indeed during past court conferences, there is a fundamental difference between an interlocutory sale, which occurs during the pendency of the case (i.e., when the government does

---

[1] The defined terms used in the government's prior submissions are also used herein.

not have title to the forfeitable property), and a sale upon entry of a final order of forfeiture (i.e., when the government has title to the forfeited property), and, in a case such as this one, can seek assistance from a foreign government to effectuate the forfeiture. *See* Transcript of April 28, 2021 Court Conference at pp. 15-17, 24. Thus, the government correctly stated to the Court -- as quoted by Danske in its letter -- that once the Court enters a final order of forfeiture, the government can seek assistance from the Mexican government to execute the final order, but that the government has endeavored to expedite that sale process by entering into an interlocutory sale agreement. Indeed, the government spent considerable time and effort negotiating an interlocutory sale agreement with Danske, Ken Jowdy, the DCSL Resort, CSL Properties and counsel for Owen Nolan, but each time the parties seemed to have reached agreement, Danske manufactured new reasons why the agreement was unsatisfactory to it. The only conclusion that can be reached is that Danske has not been negotiating in good faith with the goal of reaching a settlement. If Danske truly wanted an expedited sale process, as it has repeatedly claimed, there can be no justification for its repeated scuttling of a proposed agreement for the interlocutory sale.

The interlocutory sale plan that the Court directed the government to submit was at the behest of Danske, not the government. Five months ago, Danske told the Court that *it* would move for an interlocutory sale that *it* would conduct. *See* Danske letter to Court dated January 22, 2021, DE 990, at p. 7 ("Danske is prepared to submit to the Court its own motion for an interlocutory sale. Danske believes that any sale is likely to be quicker and more efficient if it is effectuated through the foreclosure process."). However, Danske subsequently changed its position, as it repeatedly has, and at the court conference held on April 28, 2021, sought to have the court order the *government* to conduct the sale. Given that the government does not presently hold title to the DCSL Resort, the government submitted a plan for an interlocutory sale that would require the current beneficiaries of the Mexican Trust, i.e., Danske and the DCSL Resort -- which have the present authority to instruct the Mexican Trust to convey title to the DCSL Resort -- to convey title to the new purchaser upon a sale that would be conducted with reasonable oversight by the United States Marshals Service.[2] Despite requesting the Court to order an interlocutory sale, Danske now argues that "[t]he government points to no authority as to how this Court could force third-party claimants and non-claimants, including the Borrower (a Mexican entity), to sell a property in Mexico as part of this forfeiture proceeding." Danske May 21 Letter at p. 2. Yet, contrary to Danske's latest argument that the Court cannot order Danske to conduct a sale of the DCSL Resort, in its letter filed five months ago, Danske *relied* on the Court's authority to order third parties, such as Danske, to sell forfeitable property when it quoted Rule G (7)(b)(ii) as stating that "an interlocutory sale "must be conducted . . . ***by any person the court designates.***" *See* Danske letter to Court dated January 22, 2021, DE 990, at p. 7 (emphasis supplied).

In fact, the Court has the authority to order Danske, and Jowdy, on behalf of the Borrower (which did not file a petition in this action and thus has no right to object to the forfeiture of the DCSL Resort), to sell the DCSL Resort. Pursuant to Federal Rule of Criminal Procedure 32.2(b)(7), "[a]t any time before entry of a final forfeiture order, the court, in

---

[2] Both Danske, and Jowdy, who controls the DCSL Resort entities, are subject to this Court's jurisdiction and can be ordered to take such actions.

2

accordance with Supplemental Rule G(7) of the Federal Rules of Civil Procedure, may order the interlocutory sale of property alleged to be forfeitable." Fed. R. Crim. P. 32.2(b)(7). Supplemental Rule G(7), in turn, provides, in relevant part, that:

> On motion by a party or a person having custody of the property, the court may order all or part of the property sold if:
>
> (A) the property is perishable or at risk of deterioration, decay, or injury by being detained in custody pending the action;
> (B) the expense of keeping the property is excessive or is disproportionate to its fair market value;
> (C) the property is subject to a mortgage or to taxes on which the owner is in default; or
> (D) the court finds other good cause.

Fed. R. Civ. P. Supp. R. G(7)(b)(i).

> If the court determines a sale is appropriate, Supplemental Rule G(7) sets forth who can make the sale (an authorized federal agency or any person designated by the court), the procedures governing the sale (the provisions of 28 U.S.C. §§ 2001, 2002, and 2004, unless the court approves other ones the parties agree on), and what will happen to the sale proceeds, since they are a substitute *res* that remains subject to forfeiture (they are held in an interest-bearing account by the Government).

*United States v. Swartz*, 391 F. Supp. 3d 199, 214 (N.D.N.Y. 2019) (citing Fed. R. Civ. P. Supp. R. G(7)(b)(ii)–(iv)).

In addition to the Court's authority under Federal Rule of Criminal Procedure 32.2(b)(7) and Supplement Rule G(7) to order an interlocutory sale of the DCSL Resort, the "Court is authorized by statute to 'take any . . . action to preserve the availability of property' subject to forfeiture," including ordering an interlocutory sale. *United States v. Gianelli*, 594 F. Supp. 2d 148, 150 (D. Mass. 2009) (quoting 21 U.S.C. § 853(e)(1)); *see also United States v. Johnston*, 2013 WL 5775250, at *4 (E.D. Ky. Sept. 26, 2013) (discussing authority for courts to enter interlocutory sale orders under 21 U.S.C. § 853(e), Federal Rule of Criminal Procedure 32.2(b)(7) and Supplemental Rule G(7)), report and recommendation adopted by *United States v. Woodland Dream*, 2013 WL 5775298 (E.D. Ky. Oct. 24, 2013). Further, the Court has authority to enter an order for an interlocutory sale notwithstanding the location of the forfeitable property. *See* 21 U.S.C. § 853(l) ("The district courts of the United States shall have jurisdiction to enter orders as provided in this section without regard to the location of any property which may be subject to forfeiture under this section or which has been ordered forfeited under this section.").

In sum, upon Danske's request for an interlocutory sale, the Court directed the government to submit a plan for the interlocutory sale process, and the government complied.

Since it is Danske that seeks this sale, it is odd that Danske -- which is in the position to sell the property -- objects to a plan that involves its participation in the sale it seeks. It is unclear to the government how Danske envisions an interlocutory sale of the DCSL Resort if Danske and the DCSL Resort -- the only ones in the position to sell the property at present -- do not cooperate with such a sale.[3] In any event, under the law discussed above, the Court can order their cooperation if they do not provide it willingly. *See Gianelli*, 594 F. Supp. 2d at 150 (granting the government's motion to compel the defendant's compliance with the court's order for an interlocutory sale and ordering the defendant to vacate the forfeitable property and execute all documents necessary to facilitate a sale by the United States); *see also United States v. Bailey*, 419 F.3d 1208, 1218 (11th Cir. 2005) (noting that the government is not without remedy when forfeitable property is in the hands of a third party: it can request the court to "take . . . action to preserve the availability of property" pursuant to Section 853(e)(1)).

> II. <u>Danske Improperly Asserts that Silverpeak Can Purchase Danske's Petition and Step into Danske's Shoes Without Having to Prove That it is a Bona Fide Purchaser for Value in its Own Right and That it Was Reasonably Without Cause to Believe that the DCSL Resort is Subject to Forfeiture</u>

As previously discussed, should Danske sell its claimed interest in the DCSL Resort to Silverpeak, Silverpeak would be required to prove that it is a bona fide purchaser for value in its own right, and that it was reasonably without cause to believe that the DCSL Resort is subject to forfeiture - something it cannot do. *See* Government's May 20, 2021 Letter, DE 1046, at pp. 7-9. Thus, Silverpeak would not be able to defeat forfeiture of any of its acquired interest that remains in dispute. Danske fails to provide legal support for its assertion that Silverpeak can "purchas[e] . . . Danske's claim." Danske May 21 Letter at p. 3. The two cases relied upon by Danske are completely inapposite. The courts in *Galin v. Hamada*, 2016 WL 2733132 (S.D.N.Y. May 10, 2016) and *Goodwin v. Harrison*, 98 S.E.2d 255 (S.C. 1957) addressed the "entruster provision," a provision at equity which "states that [a]ny entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business." *Galin*, 2016 WL 2733132, at *1 (citation and internal quotation marks omitted). "The purpose of the entruster provision is to enhance the reliability of commercial sales by merchants . . . by shifting the risk of resale to one who leaves his property with [a] merchant." *Id.* (citations and internal quotation marks omitted). Neither case addresses the direct transfer of a note, forfeiture law or the requirements of 21 U.S.C. § 853(n)(6)(B).

---

[3] In fact, it was discussed with the Court on numerous occasions that the parties would collaborate on and cooperate with an interlocutory sale. *See, e.g.*, Danske letter to Court, dated October 18, 2019, DE 754 ("We respectfully request that the Court order the government to meet and confer with Danske and the relevant third parties and file a joint statement on an agreed-to plan for an interlocutory sale . . . ."); Government's letter to Court, dated October 30, 2019, DE 761 ("[T]he government nonetheless intends to complete [an interlocutory] sale as expeditiously as possible, of course dependent upon Danske's and DCSL's anticipated cooperation.").

In what appears to be a strong-arm tactic to force the government and the Court to permit the sale of Danske's note, Danske threatens that if it "is not permitted to sell its note and interest to Silverpeak and Silverpeak would not be recognized as Danske's assignee in this forfeiture proceeding, Danske has advised that it can no longer allow the sale proceeds of real property parcels and time-share interests to continue to finance the Borrower's on-going operations and construction at the Resort Property." Danske May 21 Letter at p. 3. However, Danske does not specify whether it will demand that the revenue from time-share and parcel sales be paid to it to reduce the outstanding loan balance rather than fund ongoing operations, or whether it will merely refuse to allow the DCSL Resort to conduct further sales of time-shares and real property parcels. Should Danske interfere with or prevent the DCSL Resort from conducting sales of time-shares and real property parcels in the ordinary course of business, such conduct would certainly diminish the value of the DCSL Resort in violation of the Protective Order. *See* Protective Order entered on August 21, 2015, DE 330 (restraining, enjoining and prohibiting all persons from "attempting or completing any action that would affect the availability or value of" the DCSL Resort, including, but not limited to, actions that would "depreciat[e], damag[e], or in any way diminish[] the value of" the DCSL Resort). Further, the Court has the authority to order Danske not to interfere with or prevent the DCSL Resort from conducting sales of time-shares and real property parcels in the ordinary course of business so as to preserve the property for forfeiture. *See* 21 U.S.C. § 853(e) ("Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, *or take any other action to preserve the availability of property* . . . for forfeiture . . . ." (emphasis added)).

Furthermore, at the Court's request, the parties spoke on May 12, 2021 to discuss the proposed sale of Danske's note to Silverpeak. On the evening of May 20, 2021 -- the eve of the deadline for the government to file its letter -- Silverpeak emailed the government a letter to address the documentation and information requested by the government. However, Silverpeak's letter did not attach any documentation and generally failed to provide meaningful responses to the government's requests and concerns. For example, the government requested documentary proof to support counsel for Jowdy's statement that Silverpeak's relationship with the DCSL Resort and Legacy Properties had terminated in 2015.[4] Rather than provide any documentation, Silverpeak vaguely claims that "there came a point several years ago that all parties recognized that the services to be provided were no longer needed and that the agreement was terminated. While all outstanding payments for services rendered under the agreement may not have been made until sometime later, the agreement was, nevertheless terminated at that point." It is troubling that Silverpeak, which is presumably a sophisticated lender, does not have any documentation of the termination of the agreement or a record of payments that admittedly, and inexplicably, continued to be made even after the termination of the agreement.

---

[4] Notably, counsel for Silverpeak claimed to be unaware that a Silverpeak entity had contracted with Jowdy and Legacy Properties, LLC, the Jowdy-owned entity that provides management services for the DCSL Resort, to advise and facilitate capitalization for the DCSL Resort, and was being paid $20,000 per month for its services, regardless of whether any capital had actually been procured.

In addition, the government requested a representation from Silverpeak that the proposed note sale transaction would not confer a personal benefit on Jowdy. In its letter to the government, Silverpeak stated that while Jowdy would not hold a "direct or indirect equity interest in the entity that purchases the Note . . . . In order to keep Mr. Jowdy in place, he must necessarily be compensated not only for his considerable contributions over the past 15 years, but, as with any developer, he must be incentivized to ensure the success of the Property. Thus, Silverpeak anticipates an arrangement with Mr. Jowdy that compensates him with some form of profit participation, generated as a result of any recapitalization of the property." Rather than ease the government's concerns, Silverpeak's statements raise additional questions and concerns. It is unclear why Jowdy needs to be "incentivized to ensure the success of the Property," when he and his management company are already paid to do so (i.e., $225,000 per month plus an annual management fee), and it is his job as the developer and manager to ensure the DCSL Resort's success. Similarly, the nature of Silverpeak's "financial incentive" to Jowdy is unclear. Moreover, it is now apparent that the proposed note sale involves Jowdy, even though Danske's proffered term sheet did not mention that Jowdy was a party to the sale agreement. *See* Danske May 21 Letter, Exhibit 1. Without the actual sale agreement, the government is unable to determine if the agreement would have a negative impact on the forfeitable DCSL Resort property, especially when Jowdy, as the general administrator and manager of the DCSL Resort, has the capacity to bind the DCSL Resort in such an agreement. Accordingly, Danske and Silverpeak must make all documentation for the proposed note sale available to the government and the Court, if Danske and Silverpeak intend to pursue the sale regardless of Silverpeak's inability to defeat the forfeiture of the interest that remains in dispute.

III. Danske Seeks Discovery to Which it is Not Entitled or for Which the Government is Not in Possession of Responsive Documents

In general, Danske seeks discovery to which it is either not entitled or for which the government is not in possession of responsive documents. In yet another attempt to assert that the government is estopped from challenging Danske's claim, Danske seeks broad categories of discovery regarding the government's knowledge of: 1) Danske's loans; 2) the Borrower's use or misuse of funding advanced by Danske; and 3) the operation of the Resort Property and agreements between Danske and Jowdy. Danske May 21 Letter at p. 4. Danske also seeks the production of any claims or petitions provided to the government and copies of appraisals or valuations provided to or procured by the government. *Id.* According to Danske, these broad requests are "need[ed] . . . to understand the bases for and to respond to the government's incorrect contentions that Danske somehow engaged in improper lending practices, that the Resort Property has value far in excess of Danske's claim, and to show that the government should be estopped from challenging Danske's claim." *Id.* However, as discussed below, the majority of Danske's requests seek documentation that was produced by Danske or the DCSL Resort to the government in this case, and, therefore, need not be reproduced. *See id.* ("In short, Danske seeks documents and testimony, exclusive of the documents Danske or the Borrower have provided to the government . . . ."). Additionally, the discovery and deposition of an agent

that Danske seeks regarding its purported equitable estoppel defense should be denied as moot given that Danske cannot prove such a defense in any event.[5]

More specifically, Danske seeks discovery regarding: 1) "[t]he government's knowledge of Danske's loans with respect to the Resort Property"; 2) "[t]he bases for the government's claims as to the Borrower's use or misuse of funding advanced by Danske"; 3) "[t]he bases for statements or allegations made by or to the government regarding the operation of the Resort Property, Danske's agreement to extend the maturity of the loans, the Borrower's paydown of principal, and purported agreements between Danske and Mr. Jowdy." and 4) "[t]he bases for the government's statements as to the value of the Resort Property including but not limited to appraisals or valuations provided to or procured by the government." Danske May 21 Letter at p. 4. However, the government's knowledge and the bases for the government's statements and claims pertaining to these categories of discovery derives from the records that were produced to the government by Danske and the DCSL Resort, and, therefore, the government does not have any documentation to produce in response to these requests. Further, the bases for the government's assertion that Danske did not engage in arm's length transactions is derived from Danske's own records, or lack thereof. With regard to Danske's request for appraisals, the only appraisal that the government has in its possession that was not obtained from Danske or the DCSL Resort is the appraisal report obtained by the Marshals Service in 2020. This appraisal, which was performed by the government to confirm that the DCSL Resort has sufficient equity to continue litigating the forfeiture of the DCSL Resort, is privileged work product, and, in any event, is irrelevant to Danske's claim that it is a bona fide purchaser for value that was reasonably without cause to be believe that the DCSL Resort is subject to forfeiture. In other words, the value of the DCSL Resort does not bear on its forfeitability or Danske's claim that it is a bona fide purchaser for value. Therefore, the government should not be required to produce its own appraisal.

Moreover, to the extent Danske seeks discovery in support of its purported equitable estoppel defense, Danske fails to explain how any of the requested discovery is relevant to such a defense.[6] In any event, such requests should be denied as moot because there is no basis for equitable estoppel regardless of any discovery Danske might obtain from the government. As discussed more fully in the government's reply memorandum in support of summary judgment, Danske is not entitled to equitable estoppel against the government because, *inter alia*, Danske cannot show any reliance on governmental conduct. *See* United States' Reply Memorandum of Law in Support of its Motion for Summary Judgment Seeking Dismissal of the Petition Filed by Third-Party Petitioner Danske Bank, DE 937, at pp. 10-14.

The Second Circuit has found estoppel against the government "only in very limited and unusual circumstances." *United States v. Boccanfuso*, 882 F.2d 666, 670 (2d Cir. 1989); *Rojas-*

---

[5] In addition to the objections discussed herein, the government reserves its right to assert general objections to Danske's discovery demands.

[6] Danske's claim of equitable estoppel was not raised in its Verified Petition and was not even asserted until it filed the opposition brief to the government's motion for summary judgment.

*Reyes v. INS*, 235 F.3d 115, 126 (2d Cir. 2000) ("The doctrine of equitable estoppel is not available against the government except in the most serious of circumstances, and is applied with the utmost caution and restraint. Specifically, estoppel will only be applied upon a showing of affirmative misconduct by the government." (internal citations and quotation marks omitted)). Here, Danske is unable to show that "the Government made a misrepresentation upon which [Danske] reasonably relied to its detriment." *Boccanfuso*, 882 F.2d at 670. Danske's claims are belied by its own filings in this case which demonstrate that its decisions regarding the loan were not taken in reliance on anything the government said or did not say. *See* Declaration of David Daniel ("Daniel Decl."), DE 925 at ¶ 26 (admitting that Danske "continued its lender relationship with DCSL in order to protect its investment"); Danske's Reply in Support of Danske's Motion for Summary Judgment, DE 923, at p. 37 (alleging that Danske continued to lend funds because it was "contractually obligated" to do so); Danske letter to the Court, dated February 6, 2019, DE 616 (stating that after the DCSL Resort became "subject to forfeiture proceedings," Danske provided "liquidity and various loan amendments in an effort to preserve as much value as possible in the development"; and indicating that a reason it would not foreclose on the DCSL Resort was because it would "likely seriously diminish the value of the resort."). In addition, Danske was aware that the government would not recognize it as a bona fide purchaser for value. *See* DE 716 at p. 1 ("As a public company with duties to shareholders, Danske cannot provide additional liquidity to the Resort without the government recognizing Danske's claim. The government, however, refuses to do so until potentially some later date."); *see also* Transcript, October 11, 2019, at p.33:20-25, 34:1-3 ("I mean, I don't understand what the downside is to the Government ultimately. They've raised in their letter, the only thing that we've asked for is recognition of our discounted claim. But we've always proposed this in conjunction with DOJ policy. DOJ policy as to these settlements say . . . the Government always reserves the right, to the extent they find evidence that the bank is not a BFP or is an owner, that they can -- the agreement will be null and void."). Thus, the discovery Danske seeks would not alter the outcome of Danske's unsuccessful equitable estoppel argument and is nothing more than a fishing expedition. *See Pacnet Servs. Ltd. v. Off. of Foreign Assets Control*, 2021 WL 722807, at *19 (E.D.N.Y. Feb. 24, 2021) (denying PacNet's request for jurisdictional discovery, noting that none of the requested discovery could possibly alter the Court's conclusions about sovereign immunity).[7]

Lastly, Danske seeks "[a]ny claims or petitions provided to the government asserting a direct or indirect interest in the Resort Property along with any agreements between the government and such claimants or petitioners." Danske May 21 Letter at p. 4. The government will produce the petitions that have not been filed on the docket. The government does not have

---

[7] In addition, to the extent that any alleged comments were made during the course of settlement negotiations, such comments are not admissible. *See* Fed. R. Evid. 408.

any relevant agreements with any claimants or petitioners in this ancillary proceeding.

          Respectfully submitted,

          MARK J. LESKO
          Acting United States Attorney

By:    /s/ Madeline O'Connor
       Madeline O'Connor
       Diane C. Leonardo
       Assistant U.S. Attorneys
       (631) 715-7870
       (631) 715-7854

cc: Philip Kenner, by mail
    All counsel of record by ECF