

George Kostolampros

T 202.344.4426
F 202.344.8300
gkostolampros@venable.com

June 2, 2021

**VIA ECF**

The Honorable Joseph F. Bianco
Visiting Circuit Judge (sitting by designation in below referenced matter)
U.S. Court of Appeals for the Second Circuit
100 Federal Plaza
Central Islip, New York 11722

      Re: **United States of America v. Kenner, Cr. No. 13-607 (JFB)**

Dear Judge Bianco,

      We write on behalf of Danske Bank A/S London Branch ("Danske") in response to the government's May 20, 2021 letter.

> **1. The Government Finally Admits that the U.S. Government and this Court Have No Authority to Effectuate a Sale of the Resort Property and Therefore the Court Should Release the Resort Property from Forfeiture.**

      Since at least 2019, the government has repeatedly represented to the Court that it has a plan to sell the Resort Property expeditiously and that it has taken all steps to effectuate a sale, including working with the Department of Justice's Office of International Affairs 7/22/2019 Tr. at 9:24-14:25; 10/11/2019 Tr. at 50:3-10; 12/10/20 Tr. at 32:24-34:2.[1] Pushed to present that plan,

---

[1]   *See, e.g.*, 7/22/2019 Tr. at 9:24-14:25 (in response to the Court's questioning as to the length of time it would take to complete an interlocutory sale and the potential for harm to third-parties, the government stated that it had spoken with the "international asset forfeiture division" within the US Marshalls and DOJ as to a sale of the Resort Property and it was not their "intention to have it go on for years"); 10/11/2019 Tr. at 50:3-10 (responding to Mr. Wolinksy's concerns that the government cannot effectuate a sale in Mexico, the government responded, "yes, the Trust might not be here but the property is subject to Your Honor's jurisdiction and once the Government gets a final order of forfeiture it serves it on the Mexican Government who then executes it on behalf of the United States. That's the procedure. However, we're hoping to avoid that by entering into some of agreement for an interlocutory sale. But there is certainly a means, and Your Honor does have jurisdiction"); 12/10/20 Tr. at 32:24-34:2 (in response to questions as to the steps the government had made to be able to sell the property, the government stated ""Your Honor, we, the United States can assure the Court that we have taken those steps.").



the government's submission proves what Danske has been saying for years—the government cannot effectuate a sale of the Resort Property in Mexico because the U.S. Government has no jurisdiction over property located in Mexico. In its May 20 letter, the government finally admits that "it has no jurisdiction to conduct operations [i.e., a sale of the Resort Property] in a foreign country without [Mexico's] consent." Letter at 5. The government also admits that the process of effectuating a sale with Mexican authorities' assistance will take years and may never succeed. Strikingly absent from the government's letter are any specifics as to anything the government has done to begin the process within the DOJ or any representation regarding the purported steps it has taken to request assistance from Mexico. One can only surmise that Mexico will not assist the government in such a sale and that is why the government does not even propose a sale effectuated with the assistance of the Mexican authorities.

Given these realities, the only plan the government can offer the Court is one that requires Danske and the Borrower to agree to sale terms whereby the Borrower would be required to engage a third party to sell the Resort Property. It is striking that after claiming that the Borrower and Danske have colluded to strip equity value from the Resort Property, the government is now proposing a plan whereby the Borrower would engage a consultant to sell the property and the Borrower would continue to manage the resort property.

It is now clear that the government is asking the Court to order Danske and the Borrower to effectuate the sale. There is absolutely no authority for the Court to force third parties, including a Mexican entity, to agree to terms in order to effectuate a sale on behalf of the government and the Court. The government points to no authority supporting an exercise of such expansive power, and there is none.[2] And even if there was, it would violate Mexican sovereignty to order the Borrower, a Mexican entity with no claim before this Court, to engage a sales agent for the US government.

It is simple. In order for the government's "plan" to move forward, Danske and the Borrower must consensually agree to it. But Danske will not agree because the government's plan lacks terms that are absolutely necessary to Danske—

- Timing. There is no statement regarding how long the sale process must take. This is an absolute key term given that the Resort Property is not paying any of its debt service and is therefore not a going concern at this time. Who will fund the Resort

---

[2]  In its June 2, 2021 letter, the government cites cases that it claims supports its effort to have the Court order Danske and a Mexican entity to act to sell a property in Mexico, held in a Mexican trust, (and as to which the government does not yet and may never be able to hold title). None of these cases so hold. Instead, they simply recognize that courts can order parties to act to prevent diminution of value—which is precisely what Danske asks the Court to do here by asking it to put an end to the government's efforts to forfeit the Resort Property no matter the cost or harm to third parties.



>Property while the sales process is ongoing when it inevitability runs out of the cash it needs to continue development in order to effectuate sales? The government's plan does not say.
>
>- Liability arising from the sale process and any litigation in Mexico. The government's plan does not address who will be responsible for litigating any challenge to the sale process and any claims arising from the sale process. For instance, there is already pending litigation in Mexico brought by homeowners at the Resort Property. Dkt. No. 1020.
>
>- Recognition of Danske's claim. The government seeks for Danske and the Borrower to sell the property and incur expense and potential liability from selling the property while the government refuses to recognize Danske's claim or interest.

The government's admission that it cannot effectuate a sale now or, following a final order of forfeiture, for years or perhaps at all, establishes that, unless another lender decides to provide funding to continue to maintain and develop it, the Resort Property will remain in limbo and without sufficient funding for the next several years. It is almost certain that, as a result of this forfeiture proceeding, the Resort Property will end up largely valueless—an outcome that the DOJ manual seeks to avoid by counseling prosecutors not to pursue properties that can yield no value. The time has come for the government to admit that it cannot sell the Resort Property now, or likely ever, and to put an end to the government's quixotic crusade to forfeit the Resort Property no matter the cost or harm that is caused to innocent third parties like Danske.

In lieu of forfeiting the Resort Property itself, Danske respectfully submits that the Court order that the Resort Property is not subject to forfeiture because, at the same time the government has not shown it can effectuate a sale of the Resort Property now or after a final order of forfeiture, the government's efforts are destroying the value of the Resort Property and, relatedly, harming innocent third parties.

### 2. Danske Should Be Permitted to Sell its Note.

If the Court allows the government to persist in attempting to forfeit the Resort Property, Danske should be permitted to sell its note to Silverpeak (or any other entity) and, in accordance with New York law, that third party should be recognized as Danske's assignee with all of Danske's rights. There is absolutely no basis for the government's insistence on trying to force Danske to remain as a captive lender. The Borrower is making no payments on the millions it owes to Danske, while at the same time, collateral is being sold. Danske has made clear that it must protect its interests and therefore can no longer lend any additional funds to the Resort Property or execute instruction letters for the continued sale of the underlying collateral. One year after it filed its summary judgment motion it remains unclear how long this process will continue.



In light of the uncertainty around when the process will end as well as whether Danske will be repaid, Danske cannot provide instruction letters allowing for further sales of the underlying collateral when such sales will lead to no repayment of amounts owed to Danske.

Danske has proposed an alternative whereby it would sell its note to a third party. There are multiple potential benefits to permitting this alternative, including that the note buyer may be amenable to settling with the government and willing to allow sales to continue on the Resort Property. The government, however, inexplicably challenges a potential sale of Danske's note even though Danske has made clear that it would agree that it remains subject to this Court's jurisdiction to the extent no settlement was reached and litigation continued regarding Danske's claim.

The government claims that Silverpeak can only acquire Danske's note as a bona fide purchaser if (1) Silverpeak files a petition in this proceeding and (2) Danske and Silverpeak disclose the amount of consideration to be paid for Danske's note and any other term the government deems material. The government is wrong. Danske would be selling its interest and claim—one that has already been recognized as a bona fide purchaser. Silverpeak would simply be asserting Danske's interest as a bona fide purchaser, which would be assigned to Silverpeak as purchaser. Thus, the government's reliance on the requirements of Section 853(n) to argue that Silverpeak must establish it is a bona fide purchaser is misplaced. If the government was right, Silverpeak could never be a bona fide purchaser because it is without question aware of the forfeiture proceeding.

New York law does not countenance such a result. New York law is clear that purchasers and assignees of loans, including Silverpeak, acquire the same interests, rights, and obligations as the original lender. *See, e.g.*, *United States v. Watts*, 786 F.3d 152, 167 n.7 (2d Cir. 2015) (recognizing that "[w]hen a valid assignment is made, the assignee steps into the assignor's shoes and acquires whatever rights the latter had") (internal citation omitted); *Dewees Mellor, Inc. v. Weise*, No. 91 CV 2518 (EKR), 1993 U.S. Dist. LEXIS 19299, at *3 (E.D.N.Y. Dec. 29, 1993) ("It is well established that an assignee will step into the shoes of the assignor, acquiring exactly what the prior mortgage holder had"). Moreover, under New York law, "[a]fter property has passed into the hands of a bona fide purchaser, every subsequent purchaser stands in the shoes of such bona fide purchaser and is entitled to the same protection as the bona fide purchaser, irrespective of notice." *See, e.g.*, *Galin v. Hamada*, 2016 WL 2733132, at *2 (S.D.N.Y. May 10, 2016) (quoting *Goodwin v. Harrison*, 98 S.E.2d 255, 258 (S.C. 1957)) (denying defendant purchaser's motion to dismiss because material issues of fact existed as to whether prior purchasers were bona fide purchasers, but stating that, if the prior purchaser was deemed to be a bona fide purchaser, the defendant would stand in shoes of prior purchaser as a bona fide purchaser).

Just as it continues to do with Danske, the government baselessly impugns Silverpeak These flimsy and unsupported assertions as to Silverpeak are no substitute for legal authority and Danske respectfully submits that the Court should reject the government's efforts to bar Danske



The Honorable Joseph F. Bianco
June 2, 2021
Page 5

from selling its note and allow Danske to sell its note and its standing in this proceeding to Silverpeak.

      **3. The Government's Twenty-One Document Requests and Demand for Multiple Depositions Are, as Before, Overbroad and Far Exceed the Court's Admonition that Discovery Be Limited.**

The Court has stated that it will allow limited discovery related to the government's argument that, with respect to the additional advances, Danske's lending to the Borrower was not at an arms-length. The Court has instructed the parties that discovery is to be "limited" on every occasion the issue has been raised. 1/29/21 Tr. at 11:5-9; 11/23/20 Tr. at 5:6-17, 25:20-26:1, 26:19-27:6; 7/8/2020 Tr. at 17:6-16 (explaining that the Court expects the government to provide more "narrowly targeted requests" and "not those broad categories that are in the chart"); 6/10/20 (explaining that the Court finds "it hard to believe there's going to be depositions necessary in this case"). At the last hearing the Court explained that the government's discovery recover request should be limited to a "spot check " to make sure "there were proper procedures in place to make sure the money was going for . . . legitimate expenditures for the resort." 4/28/21 Tr. at 38:10-19. And, during the November 23, 2020 hearing in which the Court issued its oral ruling, the Court stated that it could envision a deposition of Michael Delvin. 11/23/20 Tr. at 25:5-14. Finally, during the most recent conference, the Court seemed to indicate that some discovery on agreements with Jowdy would also be relevant. *See* 4/28/21 Tr. at 38:5-9.

Rather than heeding the Court's instruction to limit discovery, the government proposed discovery includes twenty-one broad document requests and multiple witnesses for depositions. As set forth in greater detail in Appendix A, the government's requests are objectionable either because they are overbroad and seek documents and information that are of no relevance to the issues as to which the Court has permitted discovery, are duplicative, and/or some combination of the foregoing.

Rather than engage in a potentially lengthy back-and-forth as to the lack of relevance, among other issues with the government's requests, Danske is willing to provide discovery to permit the spot check the Court envisioned consisting of:

- A sample of 1 draw package per year for each year between 2009-2019;
- Funding memos for the foregoing sample draws; and
- Updated statements for each of Facilities A-C.

Danske also agrees to produce Mr. Michael Delvin for a deposition limited to the issues as to which the Court has ordered discovery. As to any agreement with Jowdy, Danske has already produced agreements between Danske and Jowdy, including agreements pertaining to the equity interests (and pledge thereof) as well as the commission agreement that Danske produced to the government prior to its execution and as to which the government raised no objection.



    Danske's proposed discovery is more than sufficient to address the issues the Court raised in its oral ruling and subsequent statements.

    We thank the Court for its time and attention to this matter.

                                                    Respectfully,

                                                  /s/ George Kostolampros

                                                  George Kostolampros
                                                  Doreen S. Martin
                                                  Xochitl S. Strohbehn

cc:      All parties of record via ECF