

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JHK:DCL:MMO

*610 Federal Plaza*
*Central Islip, New York 11722*

June 7, 2021

Honorable Joseph F. Bianco
United States Circuit Judge
United States Court of Appeals for the Second Circuit
Long Island Federal Courthouse
Central Islip, New York 11722

> Re: <u>United States v. Kenner and Constantine</u>
> No. CR-13-607 (S-2) (JFB)

Dear Judge Bianco:

The government respectfully submits this letter to respond to Danske Bank A/S London Branch's ("Danske") June 2, 2021 letter ("Danske June 2 Letter"). *See* Docket Entry ("DE") 1054 and to provide additional clarification and information to assist the Court on the issues to be discussed at the hearing scheduled for today.

    A.    <u>Danske's Proposed Sale of its Note to Silverpeak</u>

Throughout its participation in this action, Danske has contended that it has a superior interest only under 21 U.S.C. § 853(n)(6)(B). *See* Danske Verified Petition, DE 836, at pp. 13-14; Danske Motion for Summary Judgment, DE 848. Danske has never contended that it has a superior interest under 21 U.S.C. § 853(n)(6)(A). The difference between the two subsections is critical for purposes of Danske's contemplated assignment of the note to Silverpeak. Whereas 21 U.S.C. § 853(n)(6)(A) looks at the time of the underlying criminal conduct, 21 U.S.C. § 853(n)(6)(B) looks at the time of the purchase of the interest. *Compare* 21 U.S.C. § 853(n)(6)(A) ("the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest . . . *was* superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section") (emphasis added) *with* 21 U.S.C. § 853(n)(6)(B) ("the *petitioner is* a bona fide purchaser for value of the right, title, or interest in the property and was *at the time of purchase* reasonably without cause to believe that the property was subject to forfeiture under this section") (emphasis added).

Section 853(n)(6)(A) is plainly inapplicable here. The criminal conduct that gave rise to the forfeiture of the DCSL Resort occurred prior to the existence of Lehman's note on the DCSL

Resort. Thus, Lehman could not have asserted a claim under 21 U.S.C. § 853(n)(6)(A); neither could Danske, as Lehman's assignee; and neither could Silverpeak, if Danske were to assign its interest to Silverpeak.

Likewise, Section 853(n)(6)(B) would not apply to the contemplated assignment. The only forfeiture decision that Danske cites in support of its contention that Silverpeak should be allowed to step into Danske's shoes, and litigate Danske's petition under 21 U.S.C. § 853(n)(6)(B), is *United States v. Watts*, 786 F.3d 152, 167, n.2 (2d Cir. 2015). *See* Danske June 2, 2021 Letter, DE 1054, at p. 4. But the portion of *Watts* cited by Danske deals with Section 853(n)(6)(A), not Section 853(n)(6)(B). And nothing in any portion of the decision in *Watts* supports Danske's contention that Silverpeak would not have to demonstrate that it is be a bona fide purchaser for value reasonably without cause to believe that the DCSL Resort is subject to forfeiture. In discussing 21 U.S.C. § 853(n)(6)(A), *Watts* noted that the date the assignee law firm's interest in the forfeitable funds vested depended on the date that the assignor acquired title to the funds. *Watts*, 786 F.3d at 167, n.7. However, once *Watts* determined that the forfeitable funds had vested in the government prior to when the assignor came into possession of the funds, like the forfeitable DCSL Resort in the case at bar, *Watts* held that neither the assignor, nor the assignee, "by virtue of the Assignment, . . . . [could] colorably assert[]" an interest under Section 853(n)(6)(A). *Id.* at 167.

The court in *Watts* allowed the assignee petitioner to assert a claim under 21 U.S.C. § 853(n)(6)(B), but the assignee law firm had filed its *own* petition, and *Watts* analyzed whether the *assignee* law firm could prove that *it* was bona fide purchaser for value under Section 853(n)(6)(B) that was reasonably without cause to believe that the funds were subject to forfeiture. *Id.* at 169-74. *Watts* permitted the assignee law firm to proceed under Section 853(n)(6)(B) because the petition "plausibly alleged" that the assignee was "reasonably without cause to believe that th[e] funds were subject to forfeiture." *Id.* at 174. By contrast, here, as Danske concedes, "Silverpeak could never be a bona fide purchaser because it is without question aware of the forfeiture proceeding." Danske June 2 Letter at p. 4. Furthermore, at no point did *Watts* address whether the *assignor* was a bona fide purchaser for value under Section 853(n)(6)(B), as Danske would have the Court do here. Thus, *Watts* provides no support for Danske's contention that Silverpeak should be allowed to litigate Danske's petition, and indeed, no such legal support exists.

Danske and Silverpeak are seeking to impermissibly end-run the filing and standing requirements of 21 U.S.C. § 853(n)(2), as well as Silverpeak's burden under both federal and state law to demonstrate that it is a bona fide purchaser for value of its interest. *See* Government's May 20, 2021 Letter, DE 1046, at pp. 7-9. To accept any argument that Silverpeak should be permitted to step into Danske's shoes and litigate Danske's petition would eviscerate the purpose of 21 U.S.C. § 853(n)(6)(B), and open the door for subsequent transferees, including straw buyers, to make the same argument in order to defeat forfeiture when those transferees cannot demonstrate that they are bona fide purchaser for value under 21 U.S.C. § 853(n)(6)(B).

Further, if the Court were to allow Silverpeak to litigate Danske's petition, the government would be prejudiced because the government is seeking discovery on Danske's

2

claim. Should Danske sell its note at this stage in the ancillary proceeding, and even if Danske agrees to submit to the Court's jurisdiction, it is questionable whether the Court could compel or sanction Danske, a foreign non-party, if Danske fails cooperate with discovery and the Court's orders. Indeed, Danske's incentive to cooperate with discovery would be gone once it sells its note to Silverpeak.

> B. Danske's Ever-Changing Position Regarding the Sale of the DCSL Resort

Throughout the course of this case, Danske, Jowdy, the DCSL Resort and Marc Wolinsky, by misconstruing and misstating the government's representations, have blamed the government for failing to sell the DCSL Resort in an interlocutory sale and have accused the government of failing to have a plan to forfeit the DCSL Resort In fact, the government has consistently stated that once a final order of forfeiture is entered, the government will seek assistance from Mexican authorities to effectuate the forfeiture and sale of the DCSL Resort, but that it was also willing to facilitate an expedited sale of the DCSL Resort by entering into an interlocutory sale agreement with Danske and the DCSL Resort. *See* Danske June 2 Letter at p. 1, n.1. While the government has remained consistent in its position, Danske has presented the Court and the government with ever-changing demands. In fact, it is *Danske's* conduct for years that has prevented an interlocutory sale of the DCSL Resort. As the timeline below illustrates, Danske has repeatedly changed its position, indeed at times in the same submission, as to whether it wants an interlocutory sale of the DCSL Resort, an interlocutory sale of its note, or a foreclosure sale of the DCSL Resort. Indeed, in 2016, the government presented Danske with a potential buyer for the note and Danske rejected selling the note at that time. Likewise, Danske has changed its position regarding whom it wishes to conduct such a sale, i.e., the government or Danske itself. The government has spent significant time and effort speaking with Danske, in an effort to reach an agreed upon path forward, but Danske ultimately refuses to commit to a course of action while blaming the government for the delays that Danske's conduct has caused.

- February 6, 2019: **Danske proposes foreclosing on the DCSL Resort.** *See* DE 616 at p. 2 ("Danske has provided substantial support to the project by way of liquidity and various loan amendments in an effort to preserve as much value as possible in the development and to ensure it remains viable as a going concern……. As a publicly traded company, Danske has responsibilities to its shareholders, which would require it to consider foreclosing on the property.")

- May 21, 2019: **Danske proposes foreclosure or forced bankruptcy of the DCSL Resort, and also proposes interlocutory sale to be managed by Danske**. *See* DE 665 at p. 3 ("These timeshare and home sales are the lifeblood of the Resort and without such sales occurring the developer will have no liquidity to pay its expenses—i.e. development expenses, maintenance expenses, interest and principal payments due to Danske, and all other expenses to keep the Resort a going concern. Such an action could lead to hundreds of local employees and their dependents losing their livelihoods and could place the financial condition of many suppliers to Diamante into a weaker state; potentially impacting additional indirect job losses—each of these parties effectively becoming a new class of victim."; "Danske has made clear to the government that it will not contribute any additional cash and will not forbear on any additional commitments. The

3

very real scenarios include Danske seeking foreclosure under its loan agreements and/or creditors forcing the Resort into Concurso (bankruptcy) in Mexico."); *Id.* at p. 6, n.5 ("The government and the relevant parties had previously discussed the potential of an interlocutory sale. Unfortunately, those discussions also did not lead to an agreement for many reasons. Among other things, the government refused to acknowledge existing timeshare and home sales and acknowledge the amount of Danske's loan…. Danske, however, is willing to further discuss the potential of an interlocutory sale. Any sale, however, should be managed by Danske, who is the only party here with the relevant experience and knowledge to appropriately manage the sale process.").

- July 2, 2019: **Danske rejects interlocutory sale**. *See* Transcript July 2, 2019 at p. 16 ("And ultimately, our client has decided, look, an interlocutory sale would not solve the problem.").

- August 16, 2019: **Danske proposes interlocutory sale of its note**. *See* DE 697 at p. 1 ("Danske requested a meeting with the government and that meeting is scheduled for September 5, 2019 to discuss a proposal (which could also be an alternative to forfeiture of the resort) that could allow for the sale of Danske's note that would also provide for liquidity to the resort so that development and sales could continue.").

- September 18, 2019: **Danske proposes interlocutory sale of the DCSL Resort**. *See* DE 716 at p. 1 ("During discussions with the government following the conference [on September 5, 2019], Danske made an offer to the government that included the following: (1) a substantial guaranteed cash payment to the government for the benefit of Defendants' victims; (2) an orderly expedited interlocutory sale process and plan agreed to by Danske; and (3) a commitment to fund the liquidity needs of the Resort Property to continue development and ultimately sales through the interlocutory sale process.").

- September 26, 2019: **Danske proposes interlocutory sale of the DCSL Resort by agreement, and states that it will file a motion for an interlocutory sale if an agreement is not reached**. *See* DE 722 at p. 2 ("Further, Danske has made clear multiple times that the liquidity crisis it long predicted is now here and Danske will not (and indeed, as a public company with obligations to its shareholders, cannot) infuse the Resort Property with additional funding or loan modifications as it had in years past without an orderly agreed process for a sale and one in which Danske's lien is recognized to a certain amount."); *Id.* at p. 3 ("Simply put, Danske's proposal ensures an orderly interlocutory sales process in which Danske will commit to the additional liquidity needs of the Resort Property through an expedited interlocutory sale."; "In all events, if the Court signs the Proposed Orders, Danske will have no choice but to seek alternative remedies including but not limited to filing a motion to proceed with an interlocutory sale."); *Id.* at p. 5 ("Danske, however, as part of its offer to the government, offered to commit to fund the Resort Property through an agreed-to interlocutory sale of the equity interest. Even if Danske moved to foreclose on the Resort Property, the Trust Agreement provides that the equity interests in the Resort Property would receive any proceeds from the foreclosure that exceed the value of Dansk's lien.").

4

- October 2, 2019: **Danske proposes interlocutory sale of DCSL Resort and states that it will pursue avenues of redress in this Court and the Courts in Mexico if an interlocutory sale agreement is not reached**. *See* DE 728 at p. 2 ("Contrary to the government's description of Danske's settlement offer, Danske's offer is consistent with the Department of Justice's own guidance on expedited settlements and interlocutory sales, which sets forth that ["t]he interlocutory sale policy provides a means of protecting the interests of lenders and the Government, while preserving as much equity as possible for forfeiture, in cases where property owners default on their mortgages or other exigent circumstances arise." (citing to a DOJ manual)); *Id.* at p. 4 ("Danske has forbeared on principal payments due to it, has proposed to pay the government millions of dollars for the benefit of victims, and *offered to agree to an interlocutory sale* that would give additional potential upside to victims if the sale proceeds were above Danske's *discounted lien*." (emphasis in original); "One thing is clear though: to the extent there is no agreement reached and the Resort Property cannot continue as a going concern, Danske will seek all potential avenues of redress in this Court and the Courts in Mexico—as it must in order to protect its interest and to discharge its duties to its shareholders…. Danske's proposal at its core is to have an agreed-to orderly process with respect to any sale of the Resort Property."); *Id.* at p. 5 ("[Danske] believes that the Court's intervention is imperative to protect third parties, including the victims, by preserving the Resort Property's value.")

- October 11, 2019: **Danske explains that it cannot sell its note and proposes interlocutory sale**. *See* Transcript October 11, 2019 at p. 31 ("—first let's agree there should be an interlocutory sale."); *Id.* at p. 33 ("Frankly, I'm left bewildered as to why we can't agree to this."); *Id.* at p. 36 ("The bank went and spoke to experts, consultants and said 'Look could you sell this note.' And they came back to us and said 'No you can't because there is no clarity as to who the owner will be'…So we went back to [the government] and said 'Look we can't sell this note. We need to consider—can you consider going back to an interlocutory sale.").

- October 18, 2019: **Danske proposes interlocutory sale of the DCSL Resort**. *See* DE 754 at p. 1 ("First, as we have set forth before, including at the last conference before Your Honor, the best approach to ensure the most value in an interlocutory sale of the Resort Property and cause the least amount of disruption to third parties, is an interlocutory sale of the equity interest in the Resort Property, i.e. the DCSL interest."); *Id.* at pp. 1-2 ("Therefore, we propose including language in the Preliminary Orders setting forth that an interlocutory sale will be of either the equity interest or, in the alternative, an interlocutory sale of the Resort Property."); *Id.* at p. 2 ("Second, although Danske is supportive of progressing with an interlocutory sale, the sale process must be initiated without delay in order to preserve value and to enable the business to continue to operate as a going concern. . . . Thus, it is imperative that an interlocutory sale process is initiated and completed as soon as feasibly possible."); *Id.* at p. 3 ("Given the details that must be worked out as to an interlocutory sale and the timing concerns, it is imperative that the parties move as soon as possible to preserve value. We respectfully request that the Court order the government to meet and confer with Danske and the relevant third parties and file a joint statement on an agreed-to plan for an interlocutory sale within

5

thirty days of the issuance of the Preliminary Order of Forfeiture setting forth a plan for the interlocutory sale. To the extent the parties cannot agree on a sales process, we respectfully propose that the Court consider requiring that the parties file a joint statement setting forth each parties' views and proposal for an interlocutory sale for the Court to consider.")

- December 6, 2019: **Danske acknowledges that it could move for an interlocutory sale and agreeing to cooperate with an interlocutory sale.** *See* Transcript December 6, 2019 at p. 7 ("We want to just set forth that this is something that is an option that can be taken by the government, and frankly, could be made in a motion by Danske if it wanted to move for an interlocutory sale."); *Id.* at pp. 7-8 ("The government's right, the property right now sits and is owned by the trust, but you know ultimately what the – if this was an agreed to interlocutory sale, the Danske Bank would be agreeing to that sale, and then would make every effort that the trust would then sell that or would execute on however that – the sales moved forward.")

- December 10, 2020: **Danske discusses interlocutory sale and foreclosure.** *See* Transcript December 10, 2020 at p. 33. ("And if we find ourselves at the end of January the moving into an interlocutory sale and waiting another three months for that, that's why from our perspective, assuming Danske's research is recognized to a certain amount, Danske is going to be the largest constituent here with the largest interest here. Allowing the bank to foreclose on the property, again subject to the Court's procedures here, is the most efficient and most effective way to effectuate a sale here.").

- January 22, 2021: **Danske states that it will move for a foreclosure on the DCSL Resort that it will conduct.** *See* DE 990, at p. 7 ("Danske is prepared to submit to the Court its own motion for an interlocutory sale. Danske believes that any sale is likely to be quicker and more efficient if it is effectuated through the foreclosure process.").

- January 29, 2021: **Danske proposes interlocutory sale.** *See* Transcript January 29, 2021 at p. 15 ("Obviously yes, to move forward with an interlocutory sale…"); *Id.* at p. 28 ("And frankly, you know, if we can't move forward with an agreement in ten days or two weeks, then a sale needs to go forward, and the limited discovery as well.").

- April 27, 2021: **Danske proposes interlocutory sale of the DCSL Resort and interlocutory sale of its note**. *See* DE 1027 at p. 2 ("Given that the government apparently has no intent from withdrawing the Resort Property from forfeiture regardless of the amount of Danske's recognized claim, moving swiftly to sell the Resort Property is in all parties' interests."); *Id.* at p. 3 ("As it is now, and since September 2019, Danske has not been paid what it is owed on its loans and as such is considering all options in order to effectuate an exit. One such avenue is for Danske to sell its interest and note to a buyer willing to purchase it (and given these proceedings, at a significant discount). In this regard, Danske has been approached by an interested buyer, Silverpeak . . . .").

- April 28, 2021: **Danske asks Court to order the government to conduct an interlocutory sale of the DCSL Resort.** *See* Transcript April 28, 2021 at p.12 ("Finally,

6

as to, and I have to raise as to the sale of Danske's note, it hasn't changed… And you know, you've raised it as well, if we cannot sell our note, the Government's got to come up with a plan on how it will effectuate a sale. And how to do so on a timely basis, Your Honor.")

- June 2, 2021: **Danske refuses to cooperate with government's plan for an interlocutory sale of DCSL Resort**. *See* DE 1054 at p. 2 ("In order for the government's 'plan to move forward, Danske and the Borrower must consensually agree to it. But Danske will not agree . . . .").

C. <u>The Government's Revised Discovery Demands</u>

Lastly, with respect to Danske's claims that the discovery the government did not "heed[] the Court's instruction to limit discovery," Danske fails to inform the Court that the government eliminated at least 15 document requests and limited at least three more by deleting subparts. Thus, contrary to Danske's contention, the government reduced its document demands by nearly one-half and tailored its demands to address the remaining factual issues. The government is prepared to address this further at the court conference today.

Respectfully submitted,

MARK J. LESKO
Acting United States Attorney

By: <u>/s/ Madeline O'Connor</u>
Madeline O'Connor
Diane C. Leonardo
Assistant U.S. Attorneys
(631) 715-7870
(631) 715-7854

cc: Philip Kenner, by mail
All counsel of record by ECF