

600 MASSACHUSETTS AVE., NW   WASHINGTON, DC 20001
T 202.344.4000   F 202.344.8300   www.Venable.com

George Kostolampros

T 202.344.4426
F 202.344.8300
gkostolampros@venable.com

August 25, 2021

**VIA ECF**

The Honorable Joseph F. Bianco
Visiting Circuit Judge (sitting by designation in below referenced matter)
U.S. Court of Appeals for the Second Circuit
100 Federal Plaza
Central Islip, New York 11722

Re:   **United States of America v. Kenner, Cr. No. 13-607 (JFB)**

Dear Judge Bianco,

We write on behalf of Danske Bank A/S London Branch ("Danske") ahead of the Court's conference set for tomorrow and in response to the government's August 9, 2012 letter regarding discovery.

First, the remaining discovery at issue is the following: Danske's request for production of the government appraisal and the government's request to compel discovery of six of its twenty-one discovery requests. As set forth in Danske's August 6, 2021 letter to the Court, which is attached hereto as **Exhibit A**, there is no basis for the government's steadfast refusal to produce its appraisal. Further, as set forth below, the government's request for additional discovery should be denied. In addition to the thousands of pages of documents Danske has previously produced, Danske produced more than 22,500 pages of documents in response to the government's requests. Danske has also provided the government with written explanatory responses to *four* of these supposedly six open Requests. The government has simply articulated no basis as to why any of these remaining requests are relevant to the lone issue before the Court, and the government's effort to compel production in response to these requests should be denied.

Second, we understand that the government has reached a potential settlement in principle with Silverpeak, assuming Silverpeak were to purchase Danske's note and stand in Danske's position as lienholder, in which Silverpeak would pay a sum certain and the government would remove the Resort Property and Equity Interests from forfeiture. The parties are currently negotiating the terms, but in the event an agreement cannot be reached, Danske believes it is important for discovery and supplemental briefing to move forward expeditiously. Danske further



requests that discovery and supplemental briefing be completed as set forth in Danske's August 6, 2021 letter to the Court. *See* **Ex. A**.

1. **Danske's Production, Consisting of More Than 22,500 Pages, Is More Than Sufficient to Permit the Government to Conduct a "Spot Check" of Danske's Lending Practices.**

The government argues that Danske should be compelled to produce documents responsive to six requests that the government alleges remain in dispute. These requests are:

**Request No. 3**: Documentation and correspondence pertaining to any agreements and/or proposed agreements in which Danske would be conferring a, direct or indirect, personal or financial benefit on Kenneth Jowdy ("Jowdy"), individually, or seeking to confer a, direct or indirect, personal or financial benefit on Jowdy, individually, including, but not limited to, any agreements between Danske and Jowdy/the Borrower in which Danske agreed to pay Jowdy for Jowdy's services from Danske's own funds, and Danske's proposed settlement agreements that would permit Jowdy to purchase the DCSL Resort in a forfeiture related sale.

**Request No. 7**: Documentation pertaining to any agreements and guarantees between Danske and any and all Jowdy related entities, including, but not limited to, Legacy Cabo, LLC, Legacy Properties, LLC, KAJ Holdings LLC and Silverpeak.

**Request No. 8**: Documentation, or correspondence between Danske and the Borrower and/or Jowdy, regarding the Borrower's ability or inability to meet its loan obligations to Danske and/or Lehman.

**Request No. 9**: Documentation, agreements, and correspondence between, Danske and Jowdy and/or the Borrower and/or the Trustee, regarding: (a) Jowdy's future ownership interest(s), direct or indirect, in the DCSL Resort and/or Equity Interests; (b) foreclosure or forfeiture on the DCSL Resort loan in Mexico or in the United States; (c) bankruptcy or insolvency proceedings concerning the DCSL Resort or the Equity Interests in either Mexico or the United States; and (d) Jowdy's direct or indirect management of the DCSL Resort during and/or after the instant criminal case.

**Request No. 11**: Danske's internal correspondence and documents regarding its decision to continue lending, documentation regarding the DCSL Resort's defaults, and documentation regarding Danske's decisions pertaining to foreclosure.



>**Request No. 14**:  Notices of default of the DCSL Resort loan, and any and all documentationthat notices of default were sent to the Borrowerand/or Trustee of the Mexican trust.

Of these six requests, however, Danske provided responses relevant to Request Nos. 3, 7, 8, and 11 in its August 12, 2021 letter and Danske respectfully submits that the only requests in dispute are Request Nos. 9 and 14.

The government's central thesis as to why the Court should compel Danske to produce documents in response to these requests is that Danske is thwarting the government's right to conduct meaningful discovery and to that end is "cherry picking a ***very limited amount*** of document discovery it will produce." Dkt. No. 1102 at 1 (emphasis added). But on the very day the government filed its letter, Danske completed its production of ***more than 22,500*** pages—in accordance with the parties' agreement as to the government's document requests. The documents Danske produced and the explanations Danske provided are directly relevant to establishing Danske's diligence with respect to the Resort Property.

More specifically, in addition to producing additional diligence checklists, an updated calculation for default interest, and loan statements for all three facilities updated through June 30, 2021 for Facilities A and B and August 2, 2021 for Facility C, Danske produced—

- Ten draw packages selected by the government;
- Ten funding memoranda selected by the government; and
- Ten Delvin reports selected by the government.

These documents, the dates of which the government specifically identified and selected, establish that Danske engaged in a robust process for protecting Danske's interests by monitoring the Borrower's use of funds and progress at the Resort Property. These documents are more than sufficient to allow the government to conduct  "spot check," 4.28.21 Hr'g Tr. at 38:10-19, the Court stated it would allow with respect to Danske's lending practices vis-à-vis the Resort Property.

The government goes on to assert that the explanations Danske provided on August 12 (attached as **Exhibit B**)—including explanations as to Request Nos. 3, 7, 8, and 11, which the government incorrectly describes as open—are also somehow blocking the government from conducting meaningful discovery. This suggestion of course ignores that the government itself requested documents "*or an explanation*" for a number of its requests. Moreover, as set forth in the attached letter, a number of the government's requests rest on the government's refusal or inability to grasp commercial realities such that Danske could provide no response other than an explanation. As just one example, government Request for Production No. 15 demands—



> Documentation or an explanation for why Danske did not account for capitalized interest until April 2013 even though interest began accruing in March 2009 after the DCSL Resort first failed to make required interest payments.
>
> In response to this request, Danske stated that:
>
> Subject to Danske's objections and per the parties' meet and confers, Danske disagrees with the premise of this Request because, as explained above, the Borrower was not obligated to pay interest current. Further, it is incorrect to suggest that interest accrual automatically results in capitalization of such accrued interest. Lenders, including Danske, have the discretion to decide whether and when to capitalize interest. The fact that Trimont recorded capitalization of interest in its records reflects only that Trimont recognized that Danske *could* capitalize accrued interest—it does not mean that accrued interest *actually had* been capitalized.

See **Ex. B** at 5. Notwithstanding that this request makes no sense in light of the realities of the commercial real estate industry, Danske responded to this request—and to other similarly flawed requests (including those raised in the government's August 9 letter)—in another effort to educate the government as to commercial realities and to provide the government with information responsive to its requests. To the extent the government has additional questions, Danske invited the government and its consultant to pose such questions to Danske. Of course, the government will also be able to probe for additional information and to test Danske's explanations and document production when deposing Messrs. Delvin and Jowdy.

Moreover, the government never explains how the materials it seeks in connection with the six purportedly open requests are relevant to the lone issue before the Court. The government states that these requests go to whether Danske "is a bona fide purchaser for value that was reasonably without cause to be believe that the DCSL Resort is subject to forfeiture." Dkt. No. 1102 at 1. But the Court has already stated that the lone issue remaining is whether Danske followed proper lending procures, 4/28/21 Tr. at 38:10-19. The remaining broad requests (Request Nos. 9 and 14) do not comport with conducting a spot check into Danske's procedures.

2. **Discovery and Briefing Should Be Swiftly Completed.**

Now that Danske has completed its production, there is no reason that discovery should lag. With respect to Mr. Delvin's deposition, Danske offered the first dates Mr. Delvin is available that also will give the government sufficient time to review Danske's voluminous production without need for extension after extension. The government offers no reasonable justification as to why Mr. Jowdy's deposition cannot be taken after Mr. Delvin's during the same week in October (or even before then).



The Honorable Joseph F. Bianco
August 25, 2021
Page 5

      As set forth in Danske's August 6, 2021 letter, Danske respectfully requests that the Court set a discovery deadline—including the depositions of Mr. Delvin and Mr. Jowdy—by October 8, 2021. Danske also respectfully requests that supplemental summary judgment briefing on the remaining issue as to Danske's claim begin immediately following depositions with initial submissions due October 22, 2021 (or two weeks after the close of discovery), opposition briefs due October 29, 2021 (one week later), and reply briefs due on November 5, 2021 (one week after opposition briefs are submitted).

* * * * *

      We thank the Court for its time and attention to this matter.

      Respectfully,

/s/ George Kostolampros

George Kostolampros
Doreen S. Martin
Xochitl S. Strohbehn

cc:    All parties of record via ECF