```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF NEW YORK
```

|  |  |
|---|---|
| The United States of America, | Docket #CR-13-607-ALL (JFB) (AYS) |
| Plaintiff, |  |
| vs. | United States Courthouse Central Islip, New York February 1, 2019 |
| Phillip Kenner, et al., | 2:07 p.m. |
| Defendants. |  |

```
        TRANSCRIPT OF ORAL ARGUMENT RE: FORFEITURE HEARING
             BEFORE THE HONORABLE JOSEPH F. BIANCO
                         VISITING JUDGE
```

**APPEARANCES:**

| For The Plaintiff: | Madeline M. O'Connor, Esq.<br>U.S. Attorney's Office<br>610 Federal Plaza-5th Fl.<br>Central Islip, NY 11722 |
|---|---|
|  | Diane C. Leonardo, Esq.<br>U.S. Attorney's Office<br>610 Federal Plaza-5th Fl.<br>Central Islip, NY 11722 |
|  | Matthew Haggans, Esq.<br>U.S. Attorney's Office<br>271 Cadman Plaza East<br>Brooklyn, NY 11201 |
| For The Defendant:<br>(Thomas Constantine) | Sanford Talkin, Esq.<br>Talkin Muccigrosso<br>& Roberts, LLP<br>40 Exchange Place-18th Fl.<br>New York, NY 10005 |

|  |  |
|---|---|
|  | Phillip A. Kenner<br>Pro Se<br>No. 07480-408<br>MDC Brooklyn<br>P.O. Box 329001<br>Brooklyn, NY 11232 |
| (Stand By Counsel For<br>Phillip A. Kenner) | Jesse M. Siegel, Esq.<br>Law Office of Jesse Siegel<br>299 Broadway-Ste. 800<br>New York, NY 10007 |
| Audio Operator: |  |
| Transcribing Firm: | Writer's Cramp, Inc.<br>1027 Betty Lane<br>Ewing, NJ 08628<br>609-588-8043 |

**Proceedings recorded by electronic sound recording, transcript produced by transcription service.**

```
 1          THE CLERK:  Calling case 13-CR-607, USA vs. Kenner &
 2   Constantine.  Counsel, please state your appearance for the
 3   record.
 4          MS. O'CONNOR:  Good afternoon, Your Honor.  For the
 5   government, Madeline O'Connor, Diane Leonardo, and on the
 6   phone, Matt Haggans, and with the government are special
 7   agents Mack Alietto of the FBI and Josh Wayne of the IRS.
 8          THE COURT:  Good afternoon.
 9          MR. TALKIN:  Good afternoon, Your Honor.  Sam Talkin
10   for Mr. Constantine who's on by telephone.
11          THE COURT:  Okay.  Good afternoon, Mr. Talkin.
12          MR. KENNER:  Good afternoon, Your Honor.  Phil
13   Kenner, defendant.
14          THE COURT:  Good afternoon, Mr. Kenner, and Mr.
15   Siegel is standby attorney is present.  Good afternoon, Mr.
16   Siegel.
17          MR. SIEGEL:  Good afternoon, judge.
18          THE COURT:  And Mr. Constantine and Mr. Haggans, can
19   you hear everybody okay?
20          MR. HAGGANS:  Yes, Your Honor.  Thank you.
21          THE COURT:  Mr. Constantine, can you hear okay?  Not
22   on?
23      (Pause in proceedings)
24          THE CLERK:  He was.  He's gone?
25          THE CLERK:  He's not on.
```

            (Pause in proceedings)
            MR. TALKIN:  He was on a second ago, judge.
            THE COURT:  Right.  He may not even know that he's not on.  Sometimes, you just --
            (Pause in proceedings)
            MR. TALKIN:  He says he's on hold and it's still connected.
            THE COURT:  So he went --
            MS. O'CONNOR:  Can he hear us?
            (Pause in proceedings)
            MR. CONSTANTINE:  Hello?
            THE COURT:  Yes, Mr. Constantine.
            MR. CONSTANTINE:  Yes, Sir.  I can hear you.
            THE COURT:  All right.  And Mr. Haggans, you're still there?
            MR. HAGGANS:  Yes, Your Honor.  Thank you.
            THE COURT:  All right. Good. Excellent. All right, so I think as everybody knows, we had scheduled this for argument on the forfeiture motion.  Mr. Constantine made a request to appear by phone.  I denied that request to Mr. Constantine.  I just want to explain to you why I denied that request.  I have no issues with you and I know it's costly to fly out here and if we're just talking about scheduling, I don't have any problem with you appearing by phone.  It wouldn't make any sense to make you come out here.  But if

```
 1   we're having substantive argument, such as an argument on a
 2   motion, I think as you know from your trial, I think it's
 3   critical that you be able to be next to your lawyer so if the
 4   government says something, for example, during the argument,
 5   that you can, you know, slide a note to Mr. Talkin or say
 6   something to him so that he can respond to it.  So I don't
 7   want any issues about his ability to effectively represent you
 8   because you're on the phone.  Does that make sense?
 9               MR. CONSTANTINE:  Yeah, I appreciate it, Your Honor.
10   I totally agree and prefer to be there so the phone option was
11   really a fallback position.
12               THE COURT:  All right.  So I and -- so I didn't -- I
13   wanted to give you a little bit of additional time to make
14   plans then and --
15               MR. CONSTANTINE:  Thank you.
16               THE COURT:  -- there's some other reasons I think we
17   needed to put it off too, which I'll explain in a minute.  So
18   we're rescheduling it.  I think Michelle consulted everybody
19   and we have March 1st at 1:00 p.m. for the new oral argument
20   date on the forfeiture motion.  I did receive recently two
21   letters, one that was just docketed moments ago, which you may
22   not have even seen yet, the other one, which is from Mr. McC.
23   Souther on January 30th indicating the concerns of his clients
24   with regard to the government's forfeiture position regarding
25   the resort development in Mexico.  And then the letter that I
```

```
 1    received on January 28th, it's from CSL Property 2006, LLC and
 2    it's signed by Mr. Gonchar, Mr. Norstrom, and Mr. deVries
 3    raising similar types of concerns to Mr. McC. Souther's
 4    letter.  So we just issued a bounce asking the government -- I
 5    think some of these concerns and questions are some of the
 6    ones that I had as well with regard to the resort and how the
 7    forfeiture with respect to the resort would work, and my
 8    concerns about what impact that would have on the investments
 9    and the victims.  So want  the government to put in a letter
10    by February 15th responding to both of those letters as to
11    that particular issue.
12           The -- Mr. Kenner, I did receive your series of letters.
13    What I'm going to do is after we're done with the conference,
14    the issues regarding the jail -- well, the issues regarding
15    the jail, I think the government can stay here for because
16    there's nothing ex parte about that.  But the various back and
17    forth about the things that you still would like, I'll let
18    everybody else leave and I'll deal with those with you and Mr.
19    Siegel.  The one thing that I did want the government -- there
20    was an issue regarding a blank disc that was submitted to the
21    court that had Mr. Kenner's supplement -- forfeiture
22    supplement and then he had another ex parte disc requesting
23    certain things for the court to do and so we did get -- Mr.
24    Kenner, we did get the one that had your supplement on it.  I
25    have your supplement.  I think the government now has it too,
```

```
 1  correct or no?
 2            MS. O'CONNOR:  We do, Your Honor.
 3            THE COURT:  You do?
 4            MS. O'CONNOR:  We do.
 5            THE COURT:  Okay.  So the government had said they
 6  would like to have the opportunity to respond to that.  So why
 7  don't we say by February 22nd, the government -- it can be in
 8  the form of a letter.  It doesn't have to be a brief.  You can
 9  -- anything with regard to the supplement that you want to
10  respond to prior to the argument, you can do so.
11            MS. O'CONNOR:  Thank you, Your Honor.
12            THE COURT:  All right?  I'm trying to think what
13  else I had on my list other than the issues Mr. Kenner raised.
14  I guess one of the things, and I'm glad -- just Mr. Talkin,
15  actually this was only going to be a conference for Mr.
16  Kenner, but Mr. Talkin was here on another case.  When I saw
17  him, I thought it made sense if we could get a hold of Mr.
18  Constantine to have them participate so we could make sure
19  there were no other scheduling issues or logistical issues
20  with respect to the argument.  But since you're here, Mr.
21  Talkin, one of the things that Mr. Kenner raises is his desire
22  to get access to your CPA report, so --
23            MR. TALKIN:  It's been mailed to him.
24            THE COURT:  Okay.  Let me just make sure he got it.
25  Have you gotten that report, Mr. Kenner?
```

1   MR. KENNER: No, Sir.
2   MR. TALKIN: It was fairly -- it doesn't surprise
3   me. I think I mailed it towards the end of last week.
4   THE COURT: All right.
5   MR. TALKIN: And it takes about a week, week and a
6   half.
7   THE COURT: So let me just ask my law clerk just to
8   print it out. It's attached to the opposition -- exhibit to
9   the --
10  MR. TALKIN: Yes, right. I mailed it with the
11  opposition. Maybe she could print both.
12  THE COURT: Okay.
13  MR. TALKIN: He can take them back with him.
14  THE COURT: Okay.
15  MR. TALKIN: It's Exhibit-A of my motion --
16  THE COURT: Constantine's opposition --
17  MR. TALKIN: -- response.
18  THE COURT: And Exhibit-A. So you can take that
19  back to the jail with you today, Mr. Kenner, and if you want
20  to put some supplemental submission based upon the CPA report,
21  I guess I'll ask you to do that on the 22nd as well, okay, by
22  the 22nd.
23  MR. TALKIN: And along those lines, Your Honor, as
24  far as I've been working to try to get the CPA in to see him
25  individually without me. I've gone -- if I go, it's a lot

```
 1   easier because it's -- I take responsibility for him and when
 2   it's a co-defendant meeting, so to speak, that was fine.  I
 3   obviously, because I've been on trial, haven't been able to
 4   engage in that and I'm doing my best and I'm working with Mr.
 5   Siegel to make it happen --
 6               THE COURT:  Okay.
 7               MR. TALKIN:  -- so that he'll be able to go on his
 8   own.
 9               THE COURT:  All right.  Good.  That was another one
10   of my questions, so thank you.  I don't know whether it can be
11   done -- can it be done by phone or that's not possible really?
12               MR. TALKIN:  I think under the best of
13   circumstances, knowing what's going on over there now, there's
14   no way.
15               THE COURT:  Okay.  All right.
16               MR. SIEGEL:  Your Honor, just for the court's
17   record, there is no access to phone or e-mail over there right
18   now and very limited power, no hot water for about a week and
19   I'm being told that it may run through the whole month of
20   February before they correct any of those actions.
21               THE COURT:  All right.
22               MR. TALKIN:  They had a fire there, judge.
23               THE COURT:  Yes, I had heard that there were issues
24   there.  All right.  Well, hopefully he'll be able to get in to
25   see you, okay?
```

```
 1              MR. SIEGEL:  They've cancelled, at least for the
 2    last weekend, they plan to, to the end of the power issue, all
 3    legal visits are similar.
 4              THE COURT:  Until when?
 5              MR. SIEGEL:  Until it's fixed and I'm hearing
 6    through the end of February.  In addition, they're not giving
 7    me access to anything which we can talk about during the other
 8    session.
 9              THE COURT:  All right.  Yes, so we're going to go
10    forward on March 1st.  If, for whatever reason, Mr. Kenner,
11    you don't have an opportunity to meet with the accountant, you
12    know, I'll deal with that.  Maybe we can potentially set up
13    another date for you to come back and make any additional
14    arguments, but too much time has gone by and there's too many
15    other issues for me to just put it off indefinitely, okay?
16              MR. SIEGEL:  Your Honor, I agree with that.
17              THE COURT:  All right, good.  Okay.  So other than
18    Mr. Kenner's desire for certain things from Mr. Siegel, does
19    the government have any other issues that you want to raise
20    with the court today?
21              MS. O'CONNOR:  No, Your Honor.
22              THE COURT:  Obviously, I ask that you be on standby
23    in case Mr. Kenner raises something with me that I think I
24    need the government to weigh in on.  Maybe you can hang
25    outside for 15 minutes or so, okay?
```

1     MS. O'CONNOR:  Of course.

2     THE COURT:  Thanks.  Mr. Talkin, are there any other
3  issues you want to raise with the court today?

4     MR. TALKIN:  No, I just want to eliminate an issue.
5  Just reading the government's response to the opposition,
6  there was something in there about how the forfeiture can't go
7  -- the court doesn't have the power for the forfeiture to
8  apply to the restitution.  That -- reading again, I can see
9  how they would take it that that's what I meant.  That really
10 wasn't what was meant and it's not going to be an issue that
11 should be argued.  The point is ultimately if some of these
12 investors get their money from the properties that -- in
13 Mexico, that that's a 3553(a) factor that the court can take
14 into consideration that ultimately the money they invested and
15 ended up in them getting money through the various chains,
16 that's where that point is made and it'll be something I'll
17 deal with if that happens at sentencing, but I don't want the
18 court or the government to waste energy on that as something
19 that we're going to argue at the --

20    THE COURT:  All right.

21    MR. TALKIN:  -- forfeiture hearing.

22    THE COURT:  All right. Thank you for clarifying
23 that.  Actually, there's other -- one more question I had for
24 the government, and again, we can talk about this more at the
25 oral argument, but it might make sense to raise now because I

1  was -- it's somewhat unusual.  I think Mr. Talkin in his
2  opposition noted that the Southern District of New York I
3  think is taking a different position with respect to the
4  application of <u>Honeycutt</u>, was that in your papers or am I
5  making that up?
6          MR. TALKIN:  Yes.  There's -- basically, both
7  districts I think have taken the application of Honeycutt to
8  18 USC crimes.  However, their response as to money
9  laundering, I don't think that there's been a position one way
10 or the other on that.  So I just want to be clear because
11 money laundering is kind of -- is also an 18 USC.
12         THE COURT:  Right.
13         MR. TALKIN:  But there's clearly cases all over the
14 place in both districts where the U.S. Attorney's Office has
15 extended to <u>Honeycutt</u> beyond just the 953 drug forfeiture
16 statute.
17         THE COURT:  Okay.  So but do you believe that the
18 position they're taking with respect to money laundering is
19 different than the Southern District's position or it's not?
20         MR. TALKIN:  I don't -- I believe -- I don't believe
21 that there's a Southern District case that's taking a position
22 one way or the other.
23         THE COURT:  Okay.  All right.
24         MR. TALKIN:  I will double check that before --
25         THE COURT:  Yes, okay.

```
 1              MR. TALKIN:  And if I'm wrong about that, I'll file
 2    a letter telling you --
 3              THE COURT:  Yes, because --
 4              MR. TALKIN:  -- but I presume that's correct.
 5              THE COURT:  -- It's very -- it would be very unusual
 6    for the Department of Justice to be taking a different
 7    position on a legal issue like that in front of different
 8    judges.  Okay.  The government doesn't have anything to add on
 9    that, I guess then, right?  You're not aware of another office
10    taking a different position than you are here with respect
11    to --
12              MS. O'CONNOR:  No, I believe our positions are all
13    consistent, Your Honor.
14              THE COURT:  Okay.  All right.  All right, Mr. Talkin
15    then, do you, or your client, have any other issues?
16              MR. CONSTANTINE:  Your Honor, I do have one small
17    issue that Mr. Talkin is not even aware of.  But you may
18    recall that Ms. Suellen Ferguson (phonetic) passed away and
19    had previously sold her home and deposited the proceeds from
20    that home into Mr. Talkin's trust account.  That -- as it
21    happens, the inheritance has been settled and those proceeds,
22    I believe all of them, went to my mother who's already a
23    suretor  and I believe her intention is to either leave it
24    there or pay off her mortgage, which would essentially take
25    the value from one account to the other with an existing
```

```
 1   suretor.  So, I'm not sure but I'm pretty sure it's of no
 2   consequence, so I just wanted to inform you that that's
 3   coming.
 4              THE COURT:  Yes, I think as long as she is a suretor
 5   already, then I don't think that creates any issues.
 6              MR. TALKIN:  And the money remains in my --
 7              MR. CONSTANTINE:  Okay, thank you.
 8              MR. TALKIN:  And the money remains in my escrow
 9   account and obviously any movement will be -- I'll talk to Mr.
10   Haggans about that and we'll inform the court.
11              THE COURT:  All right.  The other issue I had, there
12   was this ongoing -- you had put in a letter many months ago
13   about the possibility of supplementing your ineffective
14   assistance.  So --
15              MR. TALKIN:  Yes.  That, I just received the minutes
16   for various different reasons.  We have them and I'm prepared
17   to do that.  Unfortunately, I'm in the middle of this long
18   trial.  It'll be the first thing I do when I'm done.
19              THE COURT:  Okay.
20              MR. TALKIN:  I will -- when we come in, in March,
21   I'm going to be either done with that trial or close to it, so
22   I'll be able to -- we'll be able to set, like, a hard schedule
23   on that March date for my filing.
24              THE COURT:  All right, good.
25              MR. TALKIN:   If that's okay with the court.
```

```
 1          THE COURT:  Yes, that's -- I just want to make sure
 2  we do it quickly.
 3          MR. TALKIN:  Yes, I promise it'll be the --
 4          THE COURT:  Okay.
 5          MR. TALKIN:  -- first project I turn to after this
 6  trial.
 7          THE COURT:  All right.  Okay, so Mr. Kenner, are
 8  there any other issues that you want to raise in the presence
 9  of any -- everybody other than the issues about what you need
10  from Mr. Siegel?
11          MR. KENNER:  I don't think so at this moment, Your
12  Honor.
13          THE COURT:  All right.
14          MR. KENNER:  If there are, I'll apologize in advance
15  and we'll just ask the government to come back in.
16          THE COURT:  All right.  So Mr. Talkin and Mr.
17  Constantine and Mr. Haggans, you're all finished, okay?
18          MR. TALKIN:  Thank you.
19          MR. CONSTANTINE:  Okay, thank you very much, Your
20  Honor.
21          THE COURT:  All right, thank you.
22          MR. HAGGANS:  Thank you, Your Honor.
23          THE COURT:  All right.
24      (Mr. Talkin, Mr. Constantine & Mr. Haggans leave the
25  hearing)
```

```
 1          MS. O'CONNOR:  Your Honor, did you want us to step
 2   outside?
 3          THE COURT:  Yes.
 4          THE COURT:  We're going to just clear the courtroom.
 5      (Pause in proceedings)
 6      (Begin sealed portion of proceeding)
 7      (End sealed portion of proceeding)
 8          THE COURT:  So the only thing I would ask the
 9   government just to look into, Mr. Kenner is -- continues to
10   have a lot of limitations on his ability to, you know, utilize
11   his materials and his computer.  You can give me that number
12   again since --
13          MR. KENNER:  I've worked about 12 to 15 days out of
14   the last 120.  About 100 days they've denied me access.
15          THE COURT:  Wait, when you say denied access, so
16   that you can have your computer and work?
17          MR. KENNER:  No, I can't do anything.  I ask in the
18   morning at 8 a.m. "Can I please go to the other building and
19   work?" and they'll tell me, "Standby" and then I ask every
20   hour until 3 o'clock.
21          THE COURT:  When you say the other building, you're
22   talking about the law library or --
23          MR. KENNER:  No, Your Honor.  They just take me and
24   put me in a room --
25          THE COURT:  Right.
```

 1                MR. KENNER:   -- in the other building, in the old
 2     building's visiting room.
 3                THE COURT:   Right, where you can use your computer.
 4                MR. KENNER:   Yes, Sir.  That's where they store it.
 5                THE COURT:   Right.
 6                MR. KENNER:  So they take me over there.  It takes
 7     about 8 minutes for them to walk me over there.
 8                THE COURT:   Right.  But then someone's got to stay
 9     with you there, right?
10                MR. KENNER:  There's somebody in the east visiting
11     room all day every day because that's where the females have
12     their visits.
13                THE COURT:  All right.  So, and I know that -- and
14     obviously the MDC is having a lot of problems right now
15     generally, but if you could just call the lawyer at the MDC,
16     see if they can look into why.  That seems like a pretty
17     limited amount of -- you know, I understand, you know, they
18     might not be able to do it, you know, every day or anything
19     like that, but 7 days out of 120 is a pretty low number.  I
20     said to Mr. Kenner that he has been able to work through that
21     and obviously make a number of submissions to the court, but I
22     just want someone to explain why he can't be given some more
23     time in that room, because -- you know, even though we're
24     hopefully, you know, finally getting to the argument on the
25     forfeiture phase, we're going to have sentencing issues that

 1    he's going to want to, I'm sure, continue to have the ability
 2    to work with his computer on, okay?
 3              MS. O'CONNOR:  We'll look into it.
 4              THE COURT:  All right, thanks.  The other thing that
 5    he mentioned to me is he has a request that the court reopen
 6    the forfeiture hearing with respect to Exhibit -- what exhibit
 7    number is it?
 8              MR. KENNER:  Government Exhibit Forfeiture 44.
 9              THE COURT:  Okay.  So I don't -- I couldn't find a
10    copy of that.  He said he wrote that to me.  I told him that
11    would be something that would not be ex parte.  That would be
12    public and if the government could put in as part of your
13    February 21st submission.  So he's going to hopefully re-mail
14    that to the court, we'll docket it, and then if the government
15    wants to respond to that request, you can put that in your
16    February 22nd submission, okay?
17              MS. LEONARDO:  I think Your Honor had previously
18    denied that request to reopen the hearings.
19              THE COURT:  Well, this -- I mean, I think I did
20    generally.  This seems like something he said in the last 4
21    weeks in relation to that particular exhibit, so I'm willing
22    to look at it even though I did deny it more generally.  I
23    don't remember if I denied that particular exhibit.  Maybe I
24    did, but I don't remember that.
25              MR. KENNER:  Your Honor --

```
1            THE COURT:  It was a more general request.
2            MR. KENNER:  Excuse me, Your Honor.  I apologize.  I
3   just want to let you know, I wasn't even aware that that was
4   an option.  It was something that you had brought up in the
5   courtroom where you had told me if there's something I wanted
6   to ask to reopen forfeiture for a particular item, that I
7   should just address the court with it.
8            THE COURT:  Yes.
9            MR. KENNER:  That's how I became aware of it.
10           THE COURT:  Okay.  All right.  But I think that was
11  in the context of me denying an overall request to reopen and
12  I said if you have such a request -- so that's fine.  Just
13  mail it.  We'll docket it and I'll just ask the government to
14  put that in their February 22nd submission as well, okay?  All
15  right, thank you.  Have a good day.
16           ALL:  Thank you, Your Honor.
17      (Court adjourned)
18
```

**CERTIFICATION**

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_Lewis Parham_                                    1/31/22

_____          _____
Signature of Transcriber                        Date