# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

MANDATE <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of March, two thousand twenty-two.

PRESENT:
> JOHN M. WALKER, JR.,
> PIERRE N. LEVAL,
> MICHAEL H. PARK,
> *Circuit Judges.*

---

UNITED STATES OF AMERICA,

    *Appellee*,

    v.    20-4278

TOMMY C. CONSTANTINE,
AKA TOMMY C. HORMOVITIS,

    *Defendant-Appellant.*\*

---

| | |
|---|---|
| FOR DEFENDANT-APPELLANT: | CHRISTOPHER D. MAN (Abbe David Lowell, Kyllan J. Gilmore, *on the brief*), Winston & Strawn LLP, Washington, D.C. |
| FOR APPELLEE: | SARITHA KOMATIREDDY (Amy Busa, J. Matthew Haggans, *on the brief*), *for* Jacquelyn M. Kasulis, Acting United States Attorney for the Eastern District of New York, Brooklyn, NY. |

\* The Clerk of Court is respectfully directed to amend the captian as set forth above.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Bianco, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant Tommy C. Constantine appeals his conviction for offenses related to his participation in several fraudulent schemes. Constantine, together with co-defendant Phillip Kenner, represented to victims that their investment funds would be used for real estate investments in Hawaii ("Hawaii Project"), to purchase stock in a company founded by Constantine called Eufora, and for investment-related litigation ("Global Settlement Fund"). Instead, Constantine and Kenner used millions of dollars from these funds for their personal benefit. A jury convicted Constantine on one count of conspiracy to commit wire fraud, 18 U.S.C. § 1349, five counts of wire fraud, 18 U.S.C. § 1343, and one count of conspiracy to commit money laundering, 18 U.S.C. § 1956(h).

Constantine moved for a new trial based on ineffective assistance of counsel, and in a footnote of a supplemental letter, he expressed uncertainty as to whether the government disclosed some of Kenner's text messages and asserted that he would file a *Brady* motion if they were in fact not included in the government's pretrial disclosures. The district court denied the ineffective assistance motion and found that Constantine failed to make a showing that there was a discovery violation. Constantine then filed a *Brady* motion arguing that the government failed to turn over thousands of Kenner's text messages containing material exculpatory evidence.[1]

---

[1] After Kenner's phone and laptop were seized by law enforcement, they were first examined by a privilege review team to ensure that evidence in which Kenner had a privilege was not shown to the prosecution team or others. Kenner received a complete copy of the contents of the devices, but a complete copy was never produced to the prosecution team or Constantine because the devices were thought to

2

The district court denied Constantine's *Brady* challenge at his sentencing hearing, concluding that "there was no realistic possibility that [the text messages] would have had an impact on any of the counts of conviction as relates to Mr. Constantine." Special App'x at 23. Constantine timely appealed. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"Where a defendant's *Brady* claim was raised in a motion for new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure, we review the denial of the motion for abuse of discretion." *United States v. Douglas*, 525 F.3d 225, 245 (2d Cir. 2008) (cleaned up). "An appellant seeking a new trial on the basis of an alleged *Brady* violation bears the burden of demonstrating both that the Government suppressed exculpatory information and that this information was material." *United States v. Brunshtein*, 344 F.3d 91, 101 (2d Cir. 2003). When determining the materiality of the undisclosed information in question, "we examine the record *de novo*" but give "[t]he trial judge's assessment of the effect of nondisclosure . . . great weight." *United States v. Rowland*, 826 F.3d 100, 112 (2d Cir. 2016) (cleaned up).

We reject Constantine's arguments. First, Constantine has not demonstrated a basis for asserting a *Brady* entitlement to a new trial. Constantine should have been aware that there were messages that had not been turned over to him because Kenner used some of the messages as evidence at trial.[2] Nevertheless, Constantine never made any effort to obtain these messages until

---

contain documents subject to Kenner's attorney-client privilege. The independent privilege review team identified privileged materials, and after the review was completed, sent the materials identified as non-privileged to Constantine and the prosecution team. It appears, however, that a large number of non-privileged messages of Kenner were not delivered to Constantine.

[2] While it is correct that the government, after seizing Kenner's phone and laptop pursuant to a search warrant, did not turn over to Constantine large portions of Kenner's text messages, there is no evidence that this failure was attributable to bad faith or any effort to conceal material that would be helpful

3

more than four years after trial. Constantine argues that he had "no way of knowing how widely Kenner communicated by text." Appellant's Br. 23. It makes no difference that Constantine did not know how many messages Kenner had sent. He should have known that there were messages seized by the government that had not been produced. Furthermore, the evidence showed that he knew Kenner was in frequent contact with the victims of their frauds. We conclude that Constantine "knew or should have known of the essential facts permitting him to take advantage of any exculpatory evidence." *United States v. LeRoy*, 687 F.2d 610, 618 (2d Cir. 1982) (citations omitted). For these reasons, the undisclosed text messages were not suppressed under the precedents governing *Brady* claims. *See, e.g.*, *United States v. Zackson*, 6 F.3d 911, 919 (2d Cir. 1993) (no *Brady* suppression when defendant "had sufficient access to the essential facts enabling him to take advantage of any exculpatory material that may have been available").

Second, Constantine has failed to make any showing that the undisclosed text messages would have been helpful to his case, much less that they would have been helpful enough to change the jury's verdict. Because Constantine argues that unidentified text messages are material,[3] he must "first establish[] a basis for his claim that [the unidentified material] contains material evidence." *Pennsylvania v. Ritchie*, 480 U.S. 39, 58 n.15 (1987) (citing *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982)); *United States v. Walsh*, 774 F. App'x 706, 707 (2d Cir. 2019) (defendant's "mere speculation that some exculpatory or impeachment material may

---

to Constantine, or that it was attributable to anything other than confusion from the effort by a privilege review team to identify and insulate documents in which Kenner might have a privilege.

[3] The government states that a digital copy of Kenner's phone, including his text messages, are in the FBI's possession. It appears, however, that the prosecution team has never had possession of these text messages and has thus failed to produce a copy to Constantine or the district court post-trial. Thus, neither has been able to review the contents of the text messages. We note, however, that the prosecution team's *Brady* obligation is ongoing. *See Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001).

4

have been withheld" insufficient to demonstrate *Brady* violation). When a conviction is attacked after the fact in an effort to set it aside, "undisclosed evidence will be deemed material only if it could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *United States v. Payne*, 63 F.3d 1200, 1209 (2d Cir. 1995) (cleaned up). Constantine has failed to articulate a plausible basis for his claim that these messages are material.

Constantine argues that these unidentified text messages would show that Kenner, without Constantine's knowledge, made representations to victims about how the investment funds would be used. He also argues that the text messages could have supported his theory that he believed that the money he received came from legitimate sales of his stock in Eufora, so that he was free to spend the money as he wished. Finally, he argues that the text messages Kenner used at trial and attached to his post-trial filings support the likelihood that the rest of Kenner's text messages must contain material evidence. We reject these arguments.

Constantine's argument as to his lack of direct involvement is consistent with the evidence the government presented at trial. Throughout the trial, the government showed that Kenner was the primary contact dealing with defrauded victims. Several investors testified that they were unaware of Constantine's involvement with the Hawaii Project, and others testified that Kenner, not Constantine, convinced them to invest in Eufora. A further showing that fraudulent representations were made by Kenner would not have changed the picture presented to the jury by the government's evidence.

The government also presented substantial evidence of Constantine's involvement in, and awareness of, the fraudulent schemes. *See United States v. Orena*, 145 F.3d 551, 558 (2d Cir. 1998) ("Where substantial evidence of guilt entirely unrelated to the withheld impeachment evidence exists, it will be more difficult to argue that there is a reasonable probability that the

withheld evidence, if disclosed, would have resulted in a different verdict."). For example, the government demonstrated through bank records, a handwriting expert, and the testimony of a non-victim witness that Constantine diverted $1 million from funds invested in the Hawaii Project to himself and concealed the fraud through sham consulting agreements that had been backdated and contained forged signatures.

With respect to Constantine's awareness of the false representations made to victims of the Eufora scheme, the government relied on a recorded conversation between Constantine and Kenner in which Constantine acknowledges his involvement in defrauding Eufora investors. Evidence reconfirming that the stock belonged to Constantine would not have tended to rebut the government's proof of Constantine's fraud.

Furthermore, as for some of the fraudulent representations, it was Constantine who made them to the victims, not Kenner. For example, Constantine personally solicited a victim named Nicholas Privitello for an investment in Eufora. Constantine induced Privitello to send $200,000 by wire in exchange for the promise of a 1.5% interest in the stock of Eufora, which stock Constantine had no intention to deliver and did not deliver. Constantine's arguments that the undisclosed texts would have shown his entitlement to use the proceeds of the sale of his stock in Eufora are irrelevant in rebutting the evidence that he made fraudulent representations. Constantine also took the lead in soliciting victims for the Global Settlement Fund scheme, and the government proved through bank records, business records, witness testimony, and text messages that Constantine made misrepresentations to victims about what their investments would be used for and spent the funds on personal expenses such as legal fees, rent, and automobile work.

Finally, the text messages that have been identified are neither exculpatory nor impeaching. At best, one of Kenner's text conversations contradicts victim Jay McKee's testimony that he did

not recall, prior to investing in the Global Settlement Fund, that his investment would be spent on certain assets. We agree with the district court that this text conversation was "completely insignificant" because McKee was not told that those assets were essentially worthless, nor was he told that the funds would be used for Constantine and Kenner's personal expenses. Special App'x at 25–26.

For the above reasons, we discern no abuse of discretion in the court's denial of Constantine's motion for a new trial.[4]

We affirm the district court's ruling as to Constantine's ineffective assistance of counsel claim as it relates to the identified text messages, which are not material and thus cannot establish prejudice. We do not otherwise rule on this claim because we lack an adequate factual record. Considering the messages that had been disclosed, the district court ruled that Constantine suffered no prejudice from his counsel's failure to obtain them before trial because there was no likelihood they would have changed the jury's verdict. Because Constantine failed to raise the issue of the undisclosed text messages until more than four years after trial, however, the district court was reasonably unwilling to postpone sentencing for the time needed for a full record to be assembled on that question. The district court therefore ruled that Constantine would not be precluded from raising the issue in a collateral attack under 28 U.S.C. § 2255.

As Constantine's ineffective assistance claim on this appeal is limited to the issues presented by the undisclosed text messages, we decline to evaluate the claim on this record. Our ruling is without prejudice to Constantine asserting such a claim in a future motion under 28 U.S.C. § 2255, as the district court contemplated. *See United States v. Fiseku*, 915 F.3d 863, 874 (2d Cir.

---

[4] For the same reasons we reject Constantine's *Brady* challenge, we reject his argument in the alternative to compel production of the text messages and to remand for an assessment of their materiality.

7

2018).

We have considered the remainder of Constantine's arguments and find them to be without merit.[5] Accordingly, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

---

[5] We reject Constantine's challenge based on an alleged violation of his rights under *California v. Trombetta*, 467 U.S. 479 (1984), because that right is implicated only when the government permanently loses potentially exculpatory evidence. *See id.* at 486–87. Here, Kenner's phone, laptop, and the electronic files generated from the devices when they were originally searched remain in FBI custody.